PRUDENTIAL LINES, INC., Plaintiff,

v.

GENERAL TIRE INTERNATIONAL CO., Overseas Packing, Inc., Delaval Turbine Inc., Santini Bros., Inc., Northeast Marine Terminal Company, Quin Marine Service, Inc. and Joseph Vinal Ship Maintenance, Inc., Defendants.

No. 76 Civ. 2834 (LFM).

United States District Court, S. D. New York.

Nov. 10, 1977.

Lilly, Sullivan & Purcell, P. C., New York City, for plaintiff; by George W. Sullivan, New York City.

Semel, McLaughlin & Boeckman, New York City, for General Tire Intern. Co.; by James I. Lysaght, New York City.

Guggenheimer & Untermyer, New York City, Duane, Morris & Hecksher, Philadelphia, Pa., for Delaval Turbine, Inc.; by Reeder R. Fox, Philadelphia, Pa.

Aaron, Bruman & Gates, Jericho, N. Y., for Santini Bros., Inc.; by Richard M. Gates, Jericho, N. Y.

Mendes & Mount, New York City, for Northeast Marine Terminal Co.; by Frank J. Maley, New York City.

Symmers, Fish & Warner, New York City, for Quin Marine Service, Inc.; by William Warner, New York City.

Bower & Gardner, New York City, for Joseph Vinal Ship Maintenance, Inc.; by Paul B. Marrow, New York City.

## OPINION

MacMAHON, District Judge.

Plaintiff Prudential Lines, Inc. ("Prudential"), an ocean carrier, seeks to recover monies paid in settlement of cargo damage claims made against it by the consignee of goods shipped to Rumania. Six of the seven defendants make motions pursuant to Rule 56, Fed.R.Civ.P. Defendants, Northeast Marine Terminal Co. ("Northeast"), Quin Marine Service, Inc. ("Quin"), and Joseph Vinal Ship Maintenance, Inc. ("Vinal"), move (1) for summary judgment on the ground that the action is time-barred, or (2), in the alternative, for partial summary judgment limiting their liability to $500 per package. Defendants General Tire International Co. ("General"), Delaval Turbine Inc. ("Delaval"), and Santini Bros., Inc. ("Santini"), move for partial summary judgment limiting their liability to $500 per package.

### I.

In 1973, General contracted with I.S.C.E. Romchim, State Enterprise for Foreign Trade of Rumania ("Romchim"), for the sale of certain equipment and machinery to be used in the operation of a tire factory. Delaval entered into a contract with Romchim to supply equipment for an ammonia factory to be built in Rumania. General

engaged Overseas and Santini to receive various component parts of the factory equipment and to prepare and package the equipment for ocean transportation to Rumania. Delaval arranged for similar work to be done by Santini.

Prudential received the goods at its Brooklyn pier, where plaintiff issued bills of lading to General and Delaval. The bills incorporated the Carriage of Goods by Sea Act ("COGSA"), including COGSA's one-year statute of limitations, 46 U.S.C. § 1303(6), and its $500 per package damage limitation, id. § 1304(5). The bills also contained a so-called "Himalaya clause,"[1] which extends to certain agents of the carrier "all exemptions and immunities from and limitations of liability which the carrier has" under the bill and COGSA.[2]

Personnel of Northeast loaded the cargo into six Prudential LASH barges. Plaintiff urges that carpenters employed by Quin were responsible to brace and chock the cargo in the barges. Lashing work was to be performed by Vinal, and eventually the LASH barges were loaded aboard plaintiff's mother vessel, the SS LASH ITALIA.

On January 25, 1975, the LASH ITALIA set sail for Europe. Rough seas were encountered en route, and, upon delivery in Rumania on February 9, 1975, the cargo was found damaged. Threatening suit in rem in Rumania, Romchim presented plaintiff with a cargo damage claim, including consequential damages, which were in excess of $16,000,000. After much negotiation, during which plaintiff says it became convinced that the Rumanian courts would not respect COGSA's $500 per package damage limitation, plaintiff and Romchim entered into a $2,000,000 settlement. The settlement was effected on February 19, 1976, one year and ten days after delivery of the cargo. On June 25, 1976, plaintiff instituted this action, seeking indemnification and alleging negligence and breach of warranty by the defendants in their failure to package and secure the cargo properly.

## II.

## MOTION FOR SUMMARY JUDGMENT ON BASIS OF STATUTE OF LIMITATIONS

Defendants, Quin, Northeast and Vinal, move for summary judgment on the ground that this action is time-barred. Arguing that plaintiff's claim is one seeking to recover for cargo damage, defendants point to the one-year statute of limitations established for such actions by COGSA, 46 U.S.C. § 1303(6), and incorporated in the bills of lading. Since the cargo was delivered on February 9, 1975, and this suit was not instituted until June 25, 1976, they argue that the lapse of more than one year requires dismissal here.

This, however, is an action seeking indemnification for monies expended by plaintiff in settlement of the claims of a third party. It is well settled that a cause of action for indemnification accrues not when the damage to the third party occurs, but when the judgment or settlement has been paid.[3] Since plaintiff paid the settlement on February 19, 1976 and brought this

---

1. The clause derives its name from Adler v. Dickinson, [1955] 1 Q.B. 158, [1954] 2 Lloyd's Rep. 122, appeal dismissed, [1955] 1 Q.B. 174, [1954] 2 Lloyd's Rep. 267 (C.A.1954), an English case involving the steamship HIMALAYA.

2. In relevant part, the clause provided:
"[I]t is expressly agreed between the parties hereto that . . . all . . . independent contractors [and] stevedores . . . engaged or employed by the carrier shall each be a beneficiary of this contract and shall be entitled to all exemptions and immunities from and limitations of liability which the carrier has under this bill of lading, and under COGSA. . . ."

3. Federal Commerce & Navigation Co. v. Calumet Harbor Terminals, Inc., 542 F.2d 437, 441–42 (7th Cir. 1976); United New York Sandy Hook Pilots' Ass'n v. Rodermond Indus., 394 F.2d 65 (3d Cir. 1968); States S. S. Co. v. American Smelting & Refining Co., 339 F.2d 66, 69–70 (9th Cir. 1964), cert. denied, 380 U.S. 964, 85 S.Ct. 1109, 14 L.Ed.2d 155 (1965); St. Paul Fire & Marine Ins. Co. v. United States Lines Co., 258 F.2d 374 (2d Cir. 1958), cert. denied, 359 U.S. 910, 79 S.Ct. 587, 3 L.Ed.2d 574 (1959); Francosteel Corp. v. S. S. Tien Cheung, 375 F.Supp. 794, 796 (S.D.N.Y.1973).

suit just over four months later, plaintiff's action was brought well within the analogous state statute of limitations of six years[4] and is certainly not barred by the maritime doctrine of laches.

The defendants can draw no solace from the Himalaya clause which gives them, as agents of the carrier, the benefit of COGSA's one-year statute of limitations. While that one-year period might on these facts bar a damage action brought by cargo interests, it does not preclude this suit by the carrier. As we have already concluded, this is not an action for cargo damage.[5]

Defendant Quin makes a further argument: prior to the settlement between plaintiff and Romchim, the statute of limitations had run on any claim Romchim had against Quin. Since plaintiff is now asserting the rights of cargo, and since cargo's action against Quin would be time-barred, Quin suggests that plaintiff's action should also be barred.

Research discloses one case in point. In *Grace Lines, Inc. v. Central Gulf S. S. Corp.*, 416 F.2d 977 (5th Cir. 1969), *cert. denied*, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970), cargo interests sued the charterer (Central) and the owner of a vessel (Grace) for damage to cargo shipped under a contract which incorporated COGSA. The relationship between Central and Grace was regulated by a time charter party, which also incorporated COGSA. Cargo's suit was timely against Central but barred against Grace by the one-year statute of limitations. The Fifth Circuit dismissed Central's claim against Grace for indemnity under the charter party. Since Central's indemni-

ty claim was based on the rights which cargo had against Grace, and since cargo's claim against Grace was time-barred, Central's claim for indemnity was also barred.

*Grace Lines* and the instant case are distinguishable. The indemnity action in *Grace Lines* was based upon a charter party which itself incorporated the COGSA statute of limitations. Thus, both the cargo action and the indemnity action had to be brought within one year of the delivery of the goods. No such relationship exists in the instant case; the marine service contract between plaintiff and Quin did not incorporate COGSA.[6] To be sure, the *Grace Lines* opinion contains language which supports Quin's position. Subsequent decisions have refused to accord this language an expansive reading, and we do not believe that *Grace Lines* should be expanded beyond its particular facts.

■ Indemnity is frequently permitted in the absence of a judicially enforceable liability between the indemnitor and the injured party. For example, under the well-established doctrine of *Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), a defendant may assert a third-party claim for indemnity against the employer of a plaintiff longshoreman, even though Section 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905, extinguishes the employer's common law liability to the plaintiff. In language apposite to the instant case, the *Ryan* court recognized that the indemnity action "is not founded upon a tort or upon any duty which the [indemni-

---

4. New York CPLR § 213. See *Celeste v. Prudential-Grace Lines, Inc.*, 35 N.Y.2d 60, 358 N.Y.S.2d 729, 315 N.E.2d 782 (1974) (applying general maritime law). *Cf. Larios v. Victory Carriers, Inc.*, 316 F.2d 63 (2d Cir. 1963).

5. Defendants rely on *Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361 (9th Cir. 1974), and *Dorsid Trading Co. v. S/S Fletero*, 342 F.Supp. 1 (S.D.Tex.1972), for a contrary result. Such reliance, however, is misplaced. Those cases involved actions by cargo interests against agents of a carrier; they do not purport to bar an indemnity action of the kind asserted here.

6. A number of courts, even within the Fifth Circuit, have distinguished *Grace Lines* on precisely this ground. See *Mitsui & Co. (U.S.A.) v. Toko Kaiun Kabushiki Kaisha*, 342 F.Supp. 14, 20 (S.D.Tex.1972); *Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha*, 342 F.Supp. 292, 296–97 (S.D.Tex.1972); *Sumito Shoji America, Inc. v. SS Aurora II*, 342 F.Supp. 298 (S.D.Tex.1972); *Marubeni-Iida (A.), Inc. v. Toko Kaiun Kabushiki Kaisha*, 327 F.Supp. 519, 523 (S.D.Tex.1971); *Francosteel Corp. v. S. S. Tien Cheung, supra*, 375 F.Supp. at 796.

tor] owes to [the injured party]. The third-party complaint is grounded upon the [indemnitor's] breach of its purely consensual obligation *owing to the shipowner* [indemnitee] to stow the cargo in a reasonably safe manner." 350 U.S. at 131–32, 76 S.Ct. at 236. In light of the *Ryan* doctrine, it can hardly be said that *Grace Lines* represents a universal rule of maritime indemnity. Thus, even assuming that Romchim's rights against Quin had expired, plaintiff may, nevertheless, be entitled to indemnity for a breach of duty owed to plaintiff under the marine service contracts at issue here.

Finally, in restricting the right of indemnification to cases in which the indemnitor would be liable to the injured party, the *Grace Lines* rule appears contrary to the broad third-party practice traditionally available in admiralty. Rule 14(c), Fed.R. Civ.P., expressly permits a claim over for indemnity or otherwise, not only where the indemnitor is or may be liable in whole or in part to the injured party, but also where the indemnitor owes a liability only to the indemnitee.[7]

This indemnification action did not accrue until February 19, 1976, the date of the settlement, and was brought in a timely fashion within five months thereafter. This branch of the motion is denied.

### III.

MOTION FOR PARTIAL SUMMARY JUDGMENT ON BASIS OF COGSA PACKAGE LIMITATION AND HIMALYA CLAUSE

Northeast, Quin and Vinal move for partial summary judgment, claiming that, by virtue of the Himalaya clause, their liability to plaintiff should be limited to $500 per package.[8] Defendants argue that (1) plaintiff could have limited its liability to Romchim to $500 per package; (2) since the Himalaya clause gives the defendants whatever COGSA limitations the carrier has, defendants too had the benefit of a $500 ceiling; and (3) such a limitation cannot be lost when plaintiff asserts the rights of cargo in an indemnity action.

Plaintiff vigorously contests the suggestion that it could have enforced the $500 limitation against Romchim. The Rumanian courts, plaintiff argues, would not have followed COGSA and might have held plaintiff liable for the full measure of Romchim's claimed damages. Since the Himalaya clause gives defendants only those limitations "which the carrier has," plaintiff says the defendants have no COGSA limitation on their liability in this action.

We will assume, as defendants contend, that they may limit their liability to $500 per package in this indemnity action if the plaintiff carrier could have limited its liability in Rumania. Whether the plaintiff could have done so turns on the law of Rumania; specifically, whether the Rumanian courts would have enforced COGSA, either under its own choice of law rules or as a matter of contract law.

■■■ Foreign law is a question that may be resolved by the court on a motion for summary judgment.[9] The parties, however, have failed to provide us with evidence sufficient to permit an informed decision on the Rumanian law. In light of these deficiencies in the record, defendants' motions are denied. At trial, the parties will be permitted to renew their contentions

---

7. Rule 14(c), Fed.R.Civ.P. Criticizing *Grace Lines* in this regard, see *Marubeni Iida (A.), Inc. v. Toko Kaiun Kabushiki Kaisha, supra,* and *Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha, supra.*

8. This case does not present the question of what constitutes a "package" under COGSA. The parties agree that 21 "packages" are involved, so that defendants' liability would total $10,500 if defendants' position is sustained. The parties also agree that the moving defendants are "independent contractors [and] steve-

dores . . . engaged or employed by the carrier" within the meaning of the Himalaya clause.

9. Rule 44.1, Fed.R.Civ.P.; *Bassis v. Universal Line, S.A.,* 436 F.2d 64 (2d Cir. 1970); *Fleischmann Distilling Corp. v. Distillers Co.,* 395 F.Supp. 221, 231 n.15 (S.D.N.Y.1975); *Instituto Per Lo Sviluppo Economico Dell' Italia Meridionale v. Sperti Prods., Inc.,* 323 F.Supp. 630 (S.D.N.Y.1971).

and to introduce evidence on the question whether the plaintiff could have limited its liability to $500 per package in an action against it in the courts of Rumania.

## IV.

### MOTION FOR PARTIAL SUMMARY JUDGMENT ON PACKAGE LIMITATION ALONE

Defendants, General, Delaval and Santini, also move for partial summary judgment, seeking to limit their liability to $500 per package. These defendants do not purport to come within the Himalaya clause. They do suggest that plaintiff's liability to Romchim was limited to $500 per package. Therefore, when plaintiff settled Romchim's claim by paying an amount in excess of that figure, plaintiff made a "gratuitous" or "voluntary" payment, for which it should not be permitted indemnity.

■ This argument, like that of the other moving defendants, assumes the very issue which requires proof. A payment in excess of a party's legal liability would be unreasonable as a matter of law, so as to preclude indemnification for the excess portion. The question, however, is whether plaintiff would indeed have had the benefit of the $500 per package limitation had plaintiff litigated in Rumania. Once again, the answer turns on issues of Rumanian law which we cannot resolve on this record. The motions for partial summary judgment are denied. Again, at trial the parties will be permitted to introduce evidence on the question whether the plaintiff could have limited its liability to $500 per package in an action in the courts of Rumania.

Accordingly, the motions of defendants Northeast, Quin and Vinal for summary judgment based upon the statute of limitations are denied; the motions of defendants Northeast, Quin, Vinal, General, Delaval and Santini for partial summary judgment limiting their liability to $500 per package are also denied.

So ordered.