**In the Matter of Peter J. FEEHAN, as Personal Representative of the Estate and Beneficiaries of Walter J. Minchick, Deceased, Plaintiff,**

v.

**UNITED STATES LINES, INC., The United States of America, Hyster Company d/b/a Hyster Company, Inc., and Nacirema Operating Co., Inc., Defendants.**

No. 79 Civ. 5382 (CES).

United States District Court,
S. D. New York.

Dec. 18, 1980.

On Motion For Reconsideration
Sept. 1, 1981.

Phillips & Cappiello, P.C., George J. Cappiello, Jr., New York City, for plaintiff.

John S. Martin, Jr., U.S. Atty., Harvey J. Wolkoff, Asst. U.S. Atty., New York City, for defendant United States of America.

Kirlin, Campbell & Keating, Mark F. Muller, New York City, for defendant U.S. Lines.

Craig & Skydel, R. Gillian Rock, New York City, for defendant Nacirema Operating Co., Inc.

Brady & Tarpey, P.C., John J. Palmeri, New York City, for defendant Hyster Co., Inc.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff brought suit for the wrongful death of a merchant seaman against the decedent's employer, United States Lines, Inc., and against the manufacturer and operators of the "straddle carrier" that allegedly struck and killed the decedent. Cross-claims for indemnification or contribution were asserted by the United States and Nacirema Operating Co., Inc. ("Nacirema"), operators of the straddle carrier, as well as by United States Lines, Inc., against Hyster Company, Inc. ("Hyster"), the manufacturer of the machine. Hyster moves to dismiss the complaint and the cross-claims or, alternatively, for summary judgment.

Hyster contends that New York law applies because the complaint bases jurisdic-

tion solely on diversity of citizenship between the parties. Hyster further alleges that New York would apply Virginia law in this case and that the plaintiff's action is time-barred under Virginia law. Hyster also moves to dismiss the cross-claims, contending that Virginia allows no action for indemnification or contribution where plaintiff is barred from suing the indemnitor. Plaintiff now seeks to avoid sole reliance on diversity jurisdiction. Instead, plaintiff's affidavit in opposition to the motion to dismiss asserts that "general maritime law" provides jurisdiction and that the doctrine of laches applies. Plaintiff claims that the applicable jurisdictional provisions are 28 U.S.C. § 1333 and the Admiralty Extension Act, 46 U.S.C. § 740 (1976).

The circumstances surrounding the accident are as follows. On October 11, 1977, the decedent's ship was docked at a U.S. Navy pier in Norfolk, Virginia. While decedent was walking on the pier, a specialized motor vehicle allegedly manufactured by Hyster that was used to transport, load or unload cargo and was known as a straddle carrier struck and killed the decedent. The straddle carrier was operated by an employee of the United States. An employee of defendant Nacirema allegedly aided in the operation of the straddle carrier by directing vehicular and pedestrian traffic in the vicinity of the straddle carrier.

■ Plaintiff's complaint was required to set forth "[a] short and plain statement of the grounds upon which the Court's jurisdiction depends." F.R.Civ.P. 8(a)(1). A valid complaint must plead sufficient facts to establish a cause of action. *See Harary v. Blumenthal*, 555 F.2d 1113, 1115 n.1 (2d Cir. 1977); *N.Y. State Waterways Ass'n. v. Diamond*, 469 F.2d 419, 421 (2d Cir. 1972). Provided that adequate facts on which to uphold jurisdiction are pleaded in the complaint, the action need not be dismissed for failure to allege the proper statutory basis of jurisdiction. *See Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 607–08 n.6, 98 S.Ct. 2002, 2005 n.6, 56 L.Ed.2d 570 (1978); *Harary v. Blumenthal*, 555 F.2d at 1115 n.1.

■ We must determine whether plaintiff's complaint established an admiralty cause of action in order to apply the doctrine of laches. Torts that occur on land may come within federal admiralty jurisdiction where the wrong at issue bears a significant relationship to traditional maritime activities. *See Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). There is an additional requirement under the Admiralty Extension Act, 46 U.S.C. § 740, that an injury "done or consummated on land" must be "caused by a vessel." *See Victory Carriers, Inc. v. Law*, 404 U.S. 202, 210–11, 92 S.Ct. 418, 424, 30 L.Ed.2d 383 (1971); *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 209–10, 83 S.Ct. 1185, 1188, 10 L.Ed.2d 297 (1963). The Admiralty Extension Act was expressly intended to circumvent prior Supreme Court cases preventing claims in admiralty for torts on land even where the ship proximately caused the injury. *See Pryor v. American President Lines*, 520 F.2d 974, 979 (4th Cir. 1975), *cert. denied*, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976); *Victory Carriers, Inc. v. Law*, 404 U.S. at 209 n.8, 92 S.Ct. at 423 n.8. Thus, an injury suffered on land in connection with traditional maritime activity must be proximately caused by a vessel to establish admiralty jurisdiction. *See id.*

■ The decedent's accident occurred when the ship on which he was employed was docked for loading or unloading. Loading and unloading at pierside probably constitute traditional maritime activities under *Executive Jet*. However, the accident was not proximately caused by the vessel. All of the events, participants and instrumentalities involved in the accident were land-bound and unconnected to the vessel. Therefore, plaintiff's claim does not come within admiralty jurisdiction.

■■ We must then consider whether he may sustain the claim based solely on diversity of citizenship. In a diversity case, we must apply the substantive law of the forum state, including the applicable limitations period. *See Klaxon Co. v. Stentor*

*Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The New York "borrowing statute" directs us to apply the shorter statute of limitations period of this state or the place where the accident occurred to an action brought by a non-resident based upon an accident occurring outside of New York. N.Y. CPLR § 202 (McKinney) (1972). Plaintiff and the decedent are non-residents of New York and the accident occurred in Virginia. We must therefore apply the shorter of New York or Virginia statute of limitations to each of plaintiff's theories of recovery.

Plaintiff first asserts a negligence claim. In New York, a party must bring an action for personal injuries due to negligence within three years of the time the cause of action accrued. N.Y. CPLR § 214 (McKinney) (1972). Virginia has a two-year limitations period for personal injuries or wrongful death due to negligence. Va.Code, §§ 8.01–243, –244 (1977). Decedent's cause of action accrued on October 11, 1977, *see Payne v. Piedmont Aviation, Inc.*, 294 F.Supp. 216, 218 (E.D.Va.1968), and the claim against Hyster was not interposed until March, 1980. Under Virginia's two-year statute of limitations, plaintiff's action for negligence is time-barred.

Plaintiff also asserts a breach of warranty claim against Hyster. The Virginia statute of limitations is two years, while the New York statute provides four years within which to bring an action. *Compare* Va. Code, § 8.01–243 (1977) *with* N.Y. UCC § 2–725 (McKinney) (1975). Plaintiff's breach of warranty action is also time-barred under the Virginia statute.

Finally, plaintiff asserts a right to recover under a strict product liability theory. Because all the relevant facts surrounding the accident occurred in Virginia, we must look to Virginia to determine whether plaintiff may maintain such an action. *See Wheeler v. Standard Tool & Mfg. Co.*, 497 F.2d 897, 898 (2d Cir. 1974). Virginia has not adopted the doctrine of strict product liability. *See Briggs v. Zotos Int'l, Inc.*, 357 F.Supp. 89, 92 (E.D.Va.1973). The Virginia courts have construed products liability claims as stating a cause of action for breach of warranty. *Id.* Accordingly, plaintiff's action is time-barred under Virginia's two-year statute of limitations.

In sum, plaintiff's claim does not arise under admiralty jurisdiction. Under principles applicable in diversity cases, the New York borrowing statute directs us to apply the shorter statute of limitations period of New York or Virginia. Each of plaintiff's theories of recovery are time-barred under Virginia law. Therefore, Hyster's motion to dismiss the complaint is granted.

Hyster also seeks to dismiss the cross-claims of the other defendants for indemnification or contribution. Hyster contends that it cannot be held liable to the cross-claimants if it is not liable to the injured party. This contention is based on the broad proposition that "if a damaged party has a cause of action against only one of the parties responsible for the damage, that one cannot enforce contribution [or indemnification] from the other." *See American Tobacco Co. v. Transport Corp.*, 277 F.Supp. 457, 461 (E.D.Va.1967). *American Tobacco*, however, is distinguishable from the case at bar. In *American Tobacco* a third-party action by the carrier of allegedly damaged machinery against the owner of the ship that transported the goods was barred because the bill of lading on which liability was based contained an express one-year limitation period. *Id.* Thus, the rights of both the plaintiff and the third-party plaintiff against the third-party defendant were derived from the bill of lading and subject to an express one-year limitation.

A more accurate statement of the limitation on actions against joint tortfeasors is that contribution or indemnification is available where the indemnitor breaches a duty to the indemnitee independent of the action by the injured party even if the injured party may not sue one of the indemnitors. *See Ryan Co. v. Pan-Atlantic Corp.*, 350 U.S. 124, 131–32, 76 S.Ct. 232, 236–37, 100 L.Ed. 133 (1956); *Prudential Lines, Inc. v. General Tire Int'l. Co.*, 440 F.Supp. 556, 559–60 (S.D.N.Y.1977). Clearly, the existence of a contractual agreement

to indemnify permits third-party action against the indemnitor despite the fact that the injured party may not sue the indemnitor directly for the tort. *See Prudential Lines, Inc. v. General Tire Int'l. Co.*, 440 F.Supp. at 560; *Burnette v. General Electric Co.*, 389 F.Supp. 1317, 1321 (W.D.Va. 1975). An implied warranty may also be the basis for survival of an indemnity action. *See Bell v. Federal Reserve Bank*, 57 F.R.D. 632, 635 (E.D.Va.1972); *Atlantic Aviation Corp. v. Estate of Costas*, 332 F.Supp. 1002, 1005 (E.D.N.Y.1971). We must examine the basis of the cross-claims to determine whether or not the claims are dependent upon the plaintiff's claim.

■ Both the United States and United States Lines, Inc. base their cross-claims on an express or implied breach of warranty. These defendants contend that Hyster negligently designed or manufactured the straddle carrier, rendering the machine unfit for loading, unloading and transporting cargo, and breached warranties of merchantability and fitness. A warranty action is an independent basis of liability and may be asserted by an indemnitee against an indemnitor despite the inability of the injured party to sue the indemnitor. The cross-claim of defendant Nacirema, however, states no basis for indemnification or contribution other than Hyster's alleged negligence. Because we cannot determine whether Nacirema's right to contribution or indemnification is derived solely from the injured party, we must grant Hyster's motion to dismiss Nacirema's cross-claim, with leave to amend the cross-claim to assert an independent basis of liability.

■ Hyster also contends that the cross-claims for contribution or indemnification are either time-barred or not yet ripe. The right to contribution or indemnification does not accrue until a party is held liable or has paid more than a commensurate share of the judgment. *See Prudential Lines, Inv. v. General Tire Int'l. Co.*, 440 F.Supp. at 558; *Nationwide Mutual Ins. Co. v. Jewel Tea Co.*, 202 Va. 527, 118 S.E.2d 646, 649 (1961). Therefore, the cross-claims are not time-barred. It remains to address

Hyster's contention that the cross-claims are not yet ripe. The most recent authority on the timeliness of an action for contribution or indemnification prior to payment by one tortfeasor under a judgment permitted litigation of such a third-party claim. *See Bell v. Federal Reserve Bank*, 57 F.R.D. at 634–35; *Atlantic Aviation Corp. v. Costas Estate*, 332 F.Supp. at 1007. We find *Bell* persuasive and there is no contrary direction from the final arbiter of Virginia law. Therefore, this action is ripe.

■ Hyster also moves for summary judgment on the cross-claims. Summary judgment is appropriate when there are no remaining material factual issues. F.R. Civ.P. 56. The cross-claims present factual issues concerning the nature of Hyster's express or implied warranties, the design and manufacture of the straddle carrier and other issues. It is therefore inappropriate to grant summary judgment on the cross-claims at this time.

As we have dismissed plaintiff's claim against Hyster but not all of the cross-claims, we must consider whether there is jurisdiction over the remaining cross-claims. The United States and United States Lines, Inc. allege independent bases of jurisdiction under either 28 U.S.C. § 1345 or 28 U.S.C. § 1332. Therefore, the remaining cross-claims may be asserted in this action.

In sum, Hyster's motion to dismiss plaintiff's claim is granted. Hyster's motion to dismiss Nacirema's cross-claim is also granted with leave to amend. However, Hyster's motion to dismiss the cross-claims of defendants United States and United States Lines, Inc. is denied. Finally, the motion for summary judgment is denied.

## ON MOTION FOR RECONSIDERATION

Plaintiff brought suit for the wrongful death of a merchant seaman against decedent's employer, United States Lines, Inc. ("Lines"), the dock owner ("United States") and against the manufacturer and operator of the "straddle carrier" that allegedly struck and killed the decedent. Plaintiff's amended complaint based jurisdiction over

Lines on the Jones Act, 46 U.S.C. § 688 (1976), and jurisdiction over United States on 28 U.S.C. § 1345 (1976), and jurisdiction over both the manufacturer of the straddle carrier, Hyster Company, Inc. ("Hyster"), and the operator of the machine, Nacirema Operating Co., Inc. ("Nacirema"), on 28 U.S.C. § 1332 (1976).

## I

Hyster previously moved to dismiss the amended complaint on the basis of the statute of limitations. In response to Hyster's motion, plaintiff sought to change tacks, without amending the complaint, and rely on the Admiralty Extension Act, 46 U.S.C. § 740 (1976), instead of diversity of citizenship over Hyster and Nacirema. By Memorandum Decision dated December 18, 1980, we held that § 740 did not apply as the accident was not "caused by the vessel." Plaintiff now moves for reconsideration of our prior decision. Changing tacks for the second time, plaintiff contends that the Admiralty Extension Act applies as against Hyster because the shipowner, Lines, allegedly breached the implied warranty of seaworthiness owed to the decedent. Plaintiff argues that the breach of the implied warranty of seaworthiness makes the accident one "caused by the vessel" within the meaning of § 740 and permits admiralty jurisdiction over Hyster.[1]

The threshold question is whether injury to a seaman on a dock during loading operations by pier-based equipment states a claim for unseaworthiness against Lines. This case requires us to reconcile *Gutierrez v. Waterman*, 373 U.S. 206, 215, 83 S.Ct. 1185, 1191, 10 L.Ed.2d 297 (1963), holding that a longshoreman injured on the dock during unloading operations by defective cargo containers may maintain an unseaworthiness claim against the shipowner, and *Victory Carriers v. Law*, 404 U.S. 202, 213–14, 92 S.Ct. 418, 426, 30 L.Ed.2d 383 (1971), holding that a longshoreman injured on the dock during loading operations by the stevedore's defective forklift truck may not maintain such an action against the shipowner. The significant factual distinction between *Gutierrez* and *Victory Carriers* is the control or origin of the instrumentality of injury.[2] In *Gutierrez*, the shipowner was under a duty to make the cargo containers safe, while in *Victory Carriers* the stevedore and not the shipowner was required to make the fork lift safe. *Compare Victory Carriers*, 404 U.S. at 213–14, 92 S.Ct. at 418, *with Gutierrez*, 373 U.S. at 210–11, 83 S.Ct. at 1188. The *Victory Carriers* court concluded:

> In the present case . . . the typical elements of a maritime cause of action are particularly attenuated: respondent Law was not injured by equipment that was part of the ship's usual gear or that was stored on board, the equipment that injured him was in no way attached to the ship, the forklift was not under the control of the ship or its crew, and the accident did not occur aboard ship or on the gangplank.

*Victory Carriers*, 404 U.S. at 213–14, 92 S.Ct. at 426. The Court sanctioned the apparent inequitable result as between longshoremen injured by land-based or ship-based equipment. *Id.* at 213, 92 S.Ct. at 425. Although a logical limit to admiralty jurisdiction might be drawn by the relation of an event to maritime commerce, *see, e. g.*, 7A Moore's Federal Practice, ¶ .325[5] (1979), the Supreme Court has not entirely abandoned the historical distinctions of

---

1. There is a suggestion in some cases that the mere status of being a seaman generally provides admiralty jurisdiction. *See, e. g., Whittington v. Sewer Construction Co., Inc.*, 541 F.2d 427, 432 (4th Cir. 1976). Such status only confers admiralty jurisdiction under the Jones Act, 46 U.S.C. § 688 (1976). *See Senko v. La Crosse Dredging Corp.*, 352 U.S. 370, 373, 77 S.Ct. 415, 417, 1 L.Ed.2d 404 (1957). Plaintiff does not contend that the Jones Act provides jurisdiction over Hyster.

2. We do not think it significant to the determination of this threshold question that plaintiff in the present case is a seaman and not a longshoreman. Both a seaman and a longshoreman may raise a claim of unseaworthiness. *Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85, 99, 66 S.Ct. 872, 879, 90 L.Ed. 1099 (1946).

locality and causation, for fear of unduly expanding the legislative basis of admiralty jurisdiction or subverting state law. *See Victory Carriers*, 404 U.S. at 211–12, 92 S.Ct. at 424–25.

In the course of its decision in *Victory Carriers*, the Court necessarily overruled that part of the decision in *Gebhard v. S.S. Hawaiian Legislator*, 425 F.2d 1303 (9th Cir. 1970), that upheld an unseaworthiness claim against the shipowner by a longshoreman injured on the dock during loading operations by a pier-based straddle carrier. *Port Administration v. S.S. American Legend*, 453 F.Supp. 584, 589 (D.Md.1978). The emphasis in *Gebhard* was on the fitness of the straddle carrier; it was alleged that "neither the pier nor the straddle carrier had lights, that the carriers were so designed as to block the driver's view of pedestrians, and that the lack of these safety precautions was the proximate cause of plaintiff's injury." *Gebhard*, 425 F.2d at 1305. Similarly, the three claims against Hyster in the amended complaint all relate to defective manufacture and design of the straddle carrier. Thus, *Victory Carriers* apparently forecloses the question whether an unseaworthiness claim of the sort accepted in *Gebhard* is properly asserted in this action.

█ Alternatively, plaintiff appears to suggest that the method of unloading and not the condition of the straddle carrier is the basis of his unseaworthiness claim against Lines and, derivatively, of the claim against Hyster. To state a claim for unseaworthiness, sufficient facts must be pleaded to raise a question concerning an unsafe condition of the ship, its appurtenances, its cargo or its crew. *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 500, 91 S.Ct. 514, 518, 27 L.Ed.2d 562 (1971); *Edynak v. Atlantic Shipping, Inc.*, 562 F.2d 215, 224 (3d Cir. 1977), *cert. denied* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). The amended complaint does not plead any facts in support of the unseaworthiness claim. There is no allegation that Lines engaged in "a *congeries* of negligent acts that are of such a character or that continue for such a length of time that they become related to

the status of the vessel." *See id.* at 224 (quoting *Robinson v. Showa Kaiun K.K.*, 451 F.2d 688, 690 (5th Cir. 1971)). The amended complaint merely recites the term "unseaworthiness."

█ If it were alleged in the complaint that an unsafe method of unloading adopted by Lines caused plaintiff's injuries, the Admiralty Extension Act requirement that an injury on land be "caused by a vessel" would be satisfied as to Lines. There would still remain the question whether § 740 encompasses negligence or products liability claims against Hyster. *See Garrett v. Gutzeit O/Y*, 491 F.2d 228, 231 (4th Cir. 1974) ("[T]he scope of admiralty jurisdiction is not always equal to the breadth of the seaworthiness warranty.") Plaintiff would have us extend admiralty jurisdiction to Hyster by broadly interpreting § 740 to include "all claims arising out of a vessel-caused injury, regardless of the parties sought to be charged." *Gebhard*, 425 F.2d at 1307; *see Maryland Port Administration v. S.S. American Legend*, 453 F.Supp. at 589. This interpretation is based on the language of § 740, which extends admiralty jurisdiction to "all cases" of injury caused by a vessel whether the injury is "done or consummated" on land or navigable water, and upon judicial economy. *Gebhard*, 425 F.2d at 1307. This principle has only been applied to obtain jurisdiction over a stevedoring company, *see, e. g., id.*; *Maryland Port Administration v. S.S. American Legend*, 453 F.Supp. at 589; a pier owner, *see Hovland v. Fearnley & Eger*, 110 F.Supp. 657, 658 (E.D.Pa.1952); and a harbor pilot, *see Fematt v. Nedlloyd Line*, 191 F.Supp. 907, 909 (S.D.Cal.1961). It has not, to our knowledge, been applied to obtain jurisdiction over the manufacturer of pier-based equipment. Even assuming that the vessel caused plaintiff's injury because supervision of the loading procedures did not adequately safeguard decedent, there is no contention that the manufacturer of the "straddle carrier" caused or even contributed to the inadequate supervision or procedures. The manufacturer did not participate in the activities that gave rise to the admiralty

claim. The claim against Hyster does not arise out of the condition that might render the injury vessel-caused. *See Heim v. City of New York*, 442 F.Supp. 35, 37 (E.D.N.Y. 1977) (An injury on land was "the result of a classic non-maritime tort ... [and] the role of the vessel in the chain of events is marginal at best.") Hyster may have an independent duty enforceable in a tort action. Such an action may be joined with an admiralty claim in an appropriate case, but it is not an admiralty claim.

The peculiar procedures and remedies available in admiralty, fashioned especially for the maritime industry, *see* 7A *Moore's Federal Practice*, ¶ .325[5] (1979), should not lightly be extended to disturb the traditional application of state law to non-maritime relationships. *See Victory Carriers*, 404 U.S. at 212–16, 92 S.Ct. at 425–27; *Heim v. City of New York*, 442 F.Supp. at 37. Nor should we extend maritime jurisdiction merely to shift the obligation of seaworthiness from the shipowner to the manufacturer of tools and equipment used by the shipowner.[3] *See Pryor v. American President Lines*, 520 F.2d 974, 982 (4th Cir. 1975), *cert. denied*, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976); *but see Gebhard*, 425 F.2d at 1312.

Thus, upon reconsideration of our prior decision, we conclude that plaintiff's unseaworthiness claim does not provide a basis for admiralty jurisdiction over Hyster. We abide by our prior decision dismissing the complaint as to Hyster for failure to satisfy the statute of limitations.

## II

After witnessing Hyster's successful assertion of a statute of limitation defense to plaintiff's claim, Nacirema filed a motion to dismiss plaintiff's claim under Fed.R.Civ.P. 12(b)(6). Nacirema did not assert the statute of limitations as an affirmative defense in its original answer or in its answer to the

amended complaint, although Hyster had done so. Rather, Nacirema raised the defense of laches which generally governs the timeliness of admiralty claims. The statute of limitations defense was asserted by Nacirema in a pleading served on January 14, 1981. At no time did Nacirema seek leave of court to amend its answer, as required by Fed.R.Civ.P. 15(a). Accordingly, we construe Nacirema's present motion as seeking leave to amend its answer and as seeking to dismiss plaintiff's complaint.

Leave to amend a pleading "shall be freely granted when justice so requires." Fed.R.Civ.P. 15(a); *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Plaintiff opposes the motion to amend on the ground that Nacirema's delay in asserting the statute of limitations defense prejudiced plaintiff's ability to bring suit in a forum where this action would not be barred. Nacirema was brought into the action on March 4, 1980. According to plaintiff's calculations, that was some seven months before the longest applicable statute of limitations in another forum would run out. Plaintiff was aware that the statute of limitations was in issue in this case, at least as to Hyster, within the time period during which it could have brought suit in another forum. There is no contention that plaintiff attempted or even considered such a protective measure, even as to Hyster. Also, there is no claim that Nacirema deliberately delayed in asserting the statute of limitations defense. The amendment was sought less than one year after the commencement of suit against Nacirema and approximately seven months after the answer to the second amended complaint. We therefore conclude that Nacirema should be granted leave to amend its answer to assert the statute of limitations as a defense.

---

**3.** An elaborate statutory scheme was necessary to limit a judicially created shift in the financial burden of maritime related injuries to longshoremen from the shipowner to the stevedore. *See, e. g., Cox v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 798, 803–04 (2d Cir.), *cert.*

*denied*, 439 U.S. 881, 99 S.Ct. 222, 58 L.Ed.2d 195 (1978); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1113–18 (5th Cir. 1981). Thus, a seemingly simple judicial pronouncement in this area can have an extended ripple effect.

820

Having amended its answer, Nacirema seeks the same relief as Hyster. Part I of this decision, as well as our previous decision dismissing the complaint as against Hyster, reasons that: (1) allegations of unfitness of pier-based equipment owned, controlled and operated by someone other than the shipowner which causes injury on land do not state an unseaworthiness claim against the shipowner; (2) factual allegation of an improper method of unloading may state a claim for unseaworthiness against the shipowner for an injury arising out of the operation of pier-based equipment; and (3) an unseaworthiness claim against the shipowner does not provide admiralty jurisdiction over all claims or all parties to a case, unless the parties participated in the acts that form the basis of the unseaworthiness claim. We hold that the amended complaint failed to state the necessary factual allegations of improper unloading. Even assuming that the allegations were proper, we hold that Hyster did not in any way contribute to the inadequate procedures that form the basis of the unseaworthiness claim.

Plaintiff's failure to plead facts sufficient to support a claim of unseaworthiness against Lines precludes jurisdiction under § 740 against Nacirema. If plaintiff can remedy the shortcoming in its amended complaint, there is a basis for asserting jurisdiction over Nacirema pursuant to § 740. The amended complaint states that Nacirema "failed . . . to perform its work at Pier 4, Navy Terminal, Norfolk, Virginia, in a reasonably safe, careful, proper, prudent and workmanlike manner." The amended complaint also alleges that Nacirema "signaled and directed" the straddle carrier "at the time of the activity alleged herein." Thus, the primary defect in plaintiff's allegations against Hyster is alleviated by its allegations against Nacirema. The acts of Nacirema are related to the unloading procedures that form the basis of plaintiff's unseaworthiness claim against Lines. Accordingly, the Admiralty Extension Act would apply to Nacirema.

### III

Plaintiff's motion to reconsider our prior decision dismissing the complaint against Hyster is granted, and upon reconsideration our prior opinion is affirmed. We grant plaintiff leave to amend the complaint within fifteen days of the date of this decision to assert a factual basis for the unseaworthiness claim against Lines and to repair the jurisdictional allegations. We reserve decision on Nacirema's motion to dismiss until we consider the allegations of the amended complaint.

SO ORDERED.