**Roger Wallace CHRISTIANSEN, Plaintiff,**

v.

**BIG ISLAND FISH CONNECTION, INC.; Kona Marlin Center, Inc.; Aliento Charters, Inc., in personam; and the F/V HOKU O.N. 981093 in rem. Defendants.**

Civ. No. 94–00231 HG.

United States District Court, D. Hawai'i.

Dec. 15, 1994.

Jay Friedheim, Honolulu, HI, for plaintiff.

Arthur F. Roeca and April Luria, Honolulu, HI, for defendant Big Island Fish Connection, Inc.

Joseph Fagundes, III, Kailua–Kona, HI, for defendants Aliento Charters, Inc. and F/V Hoku, O.N. 981093.

James Dahlberg, Kamuela, HI, defendant pro se.

Kona Marlin Center, Inc., Kailua–Kona, HI, defendant pro se.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

GILLMOR, District Judge.

Defendants Aliento Charters, Inc. (Aliento) and the F/V Hoku O.N. (Hoku) move pursuant to Fed.R.Civ.Proc. 12(b)(1) to dismiss plaintiff Roger Christiansen's Second Amended Complaint, filed July 13, 1994, for lack of subject matter jurisdiction or, in the alternative, move for partial summary judgment on plaintiff's tort action pursuant to Fed.R.Civ.Proc. 56. The motions are denied.

### I. BACKGROUND

Christiansen avers the following facts: On January 14, 1994, he injured his back during an attempt to board his boat moored at the Kona Marlin Center in Honokohau Harbor, Hawaii. Prior to falling, he watched from his boat as a marlin caught on an Aliento charter tour was unloaded from the Hoku and hauled up and down a set of stairs adjoining the pier and leading up to a fish processing area. Christiansen then went ashore, climbed the same set of stairs to use a public restroom, and returned by those stairs to his boat in order to fetch a fishing rod. As he grasped the rod for support, he slipped in mid-step between the fuel dock and the transom of his

boat, leaving a thick coating of fish slime where his foot landed.

Christiansen contends that slime was left behind when the marlin, in an alleged departure from customary procedure, was stabbed with fish hooks, carried across the pier and then dragged up and down the stairs by members of the Hoku's crew and employees of the Big Island Fish Connection (BIFC). Christiansen asserts that a catch of this size is customarily hoisted from the boat to a scale, and then hoisted up to the processing area.

On July 13, 1994, Christiansen filed a second amended complaint alleging general negligence, negligent failure to warn, and infliction of emotional distress on the part of BIFC, the Hoku, Aliento Charters, Inc. (Aliento), Kona Marlin Center (KMC) and its operator, James Dahlberg. On September 15, 1994, defendants Aliento and the Hoku filed a motion to dismiss, or, in the alternative, for partial summary judgment. Defendants BIFC and James Dahlberg did not join in this motion. Aliento and the Hoku assert that admiralty jurisdiction is lacking under 28 U.S.C. 1333, because Christiansen's injuries did not occur upon navigable waters. The moving defendants further assert that admiralty jurisdiction does not lie under the Admiralty Extension Act, 46 U.S.C. § 740, 62 Stat. 496 (AJA), because the injuries were not proximately caused by a vessel.

## A. The Rule 12(b)(1) Motion to Dismiss

■ The Hoku and Aliento's motion to dismiss raises the issue whether this Court has admiralty jurisdiction over an injury consummated on a boat on navigable water and allegedly caused by a condition on shore stemming from the negligent handling of maritime cargo. The Court concludes that jurisdiction on this basis is proper under 28 U.S.C. § 1333(1) or, alternatively, the AJA.

Federal district courts have original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). "Admiralty jurisdiction is appropriate where a 'potential hazard to maritime commerce arises out of activity that bears a substantial relationship to traditional maritime activity.'" *Delta Country Ven-*

*tures, Inc. v. Magana,* 986 F.2d 1260, 1262 (9th Cir.1993), *quoting Sisson v. Ruby,* 497 U.S. 358, 362, 110 S.Ct. 2892, 2895, 111 L.Ed.2d 292 (1990).

■ The first step in applying section 1333(1) is to ascertain the "relevant activity" whose proximity to maritime activity is to be gauged. "[R]elevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Sisson,* 497 U.S. at 364, 110 S.Ct. at 2897. The general conduct from which this suit arises, and accordingly the relevant activity under section 1333(1), are Christiansen's boarding of his boat and the defendants' unloading of a fish. *See id.* at 365, n. 3, 110 S.Ct. at 2897, n. 3.

■ The next step in this analysis is to determine whether the relevant activity bears a "substantial relationship to traditional maritime activity." *Id.* at 365, 110 S.Ct. at 2897. The following factors govern this determination: (i) the function and role of the parties; (ii) the types of vehicles and instrumentalities involved; and (iii) traditional concepts of the role of admiralty law. *Delta Country Ventures,* 986 F.2d at 1263.

The substantial relationship test is plainly satisfied here. As to the first factor, the plaintiff is the captain of a seafaring boat, the Impulse, and an officer and shareholder in Impulse Charters, Inc., a charter fishing company. Christiansen asserts that when he was injured, he was fetching a fishing rod from his boat to serve as a prop for a photograph of his charter outing's catch that day. Plaintiff's Memorandum in Opposition to Motion to Dismiss (Response), Exhibit A at 181. Christiansen thus indicates that he was acting in his capacity as a sea captain at the relevant time. The moving defendants are a charter cruise company and a charter boat whose employees are alleged to have acted negligently in unloading a fish, a function plainly within the maritime role of the moving defendants, a fishing boat and its charterer.

As to the second factor, boats on navigable water are alleged to have been involved at every stage of Christiansen's injury, from causation to consummation. With regard to

the final factor, the Court concludes that an exercise of jurisdiction under section 1333 is consistent with traditional concepts of the role of admiralty law where, as here, an injury is alleged to have arisen from the convergence of two thoroughly traditional maritime activities, the unloading of fish by seamen and a sea captain's boarding of his vessel. *See Sisson,* 497 U.S. at 365, n. 3, 110 S.Ct. at 2897, n. 3; *Butler v. American Trawler Co., Inc.,* 887 F.2d 20, 21 (1st Cir. 1989) (Breyer, J.) ("the boarding of a ship bears a significant relation to traditional maritime activities"); *Feehan v. United States Lines, Inc.,* 522 F.Supp. 811, 814 (S.D.N.Y.1980) ("[l]oading and unloading at pierside probably constitute traditional maritime activities").

■ An exercise of admiralty jurisdiction is also proper under the AJA. The AJA mandates that vessels on navigable water are liable for damage or injury "notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C. § 740. The AJA was originally passed to extend admiralty jurisdiction to property damage or personal injury consummated on land by vessels on navigable waters, such as where a vessel runs aground or where a ship's winch and booms fail in port. *See* 1 Benedict on Admiralty, § 173 at 11–36, 37 (7th ed. 1973). The AJA's reach has subsequently been expanded to cover injuries caused on land by the crews of docked vessels.

In *Gutierrez v. Waterman S.S. Corp.,* 373 U.S. 206, 213, 83 S.Ct. 1185, 1190, 10 L.Ed.2d 297 (1963), for example, the Court held in analogous circumstances that the AJA extended admiralty jurisdiction over a longshoreman's personal injury suit against the vessel whose cargo of beans he was unloading. Beans had spilled from leaking containers onto the dock. The longshoreman slipped on some loose beans, fell and injured himself. The Supreme Court rejected the respondent-shipping line's contention that the AJA is "limited to injuries actually caused by the physical agency of the vessel or a particular part of it ...," insofar as "[t]here is no distinction in admiralty between torts committed by the ship itself and

by the ship's personnel while operating it...." *Id.* at 209–10, 83 S.Ct. at 1188.

The case chiefly relied on by defendants, *Anderson v. Iceland S.S. Co.,* 585 F.2d 1142 (1st Cir.1978), addressed the duty of care owed by a shipowner to the employees of a stevedore under the 1972 amendments to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq. Anderson* did not address the jurisdictional reach of 28 U.S.C. § 1333(1) or the AJA. Accordingly, despite certain factual similarities, *Anderson* is not relevant to the jurisdictional issues raised in the ordinary maritime negligence action at bar. *Feehan* is likewise inapplicable because there it was established that "[a]ll of the events, participants and instrumentalities involved in the accident were land-bound and unconnected to the vessel," 522 F.Supp. at 814, whereas here there is at least a triable issue of fact as to whether the moving defendants' seafaring employees assisted in the unloading of the marlin at pierside.

In *Gutierrez,* an eight-justice majority held that a "case is within the maritime jurisdiction under 46 U.S.C. sec. 740 when, as here, it is alleged that the shipowner commits a tort while or before the ship is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act." *Id.* 373 U.S. at 210, 83 S.Ct. at 1188. This holding applies squarely to the threshold issue of the AJA's applicability in the instant case, also involving a pierside hazard alleged to stem directly from the negligent handling of maritime cargo, and for purposes of a Rule 12(b)(1) motion, sufficiently undermines the defendants' contention that proximate causation between the injury and the Hoku is lacking under the AJA. Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

B. *The Rule 56 Motion for Summary Judgment*

■ In addition, defendants contend that they are entitled to summary judgment because "there is no genuine issue of fact as to: ... (3) Plaintiff did not see any slick or slimy surface upon which he could have slipped, and (4) that HOKU did not proximately

cause any of Plaintiff's injuries." Memorandum in Support of Motion for Summary Judgment (Opening Memo) at 5–6. Defendants failed to substantiate this contention. Defendants do not dispute that they hauled a hooked, beheaded marlin across the pier from which Christiansen fell on the day in question. They assert rather that the fish was stiff and "leaking no blood or body fluids". Opening Memo, Exhibit A, Affidavit of Collin Hoyle at 2.[1]

On the other hand, Christiansen testified that he found fish slime on the bottom of his shoes immediately after falling, Response, Exhibit A at 131, and that he saw "very thick slime all over the nonskid and where [his] foot slipped." *Id.* at 134. He also testified that he saw wetness on stairs he climbed shortly after they came in contact with the marlin, and that the wetness could have been fish slime. *Id.* at 133. Viewing the evidence in the light most favorable to the non-moving party, as required, *Stevens v. Moore Business Forms, Inc.,* 18 F.3d 1443, 1446 (9th Cir.1994), Christiansen came forward with evidence militating against the prospect that some other substance or slime from the catch of another boat caused him to slip when he testified that he did not believe that his boat took on fuel that day, that he did not notice the Hoku taking on fuel, and that at most one other vessel was docked near the fuel dock at the time of his injury. Response, Exhibit A at 60. Finally, he cast doubt on the possibility that the fish slime originated from his own boat when he testified that the fish caught on his boat that day was never brought on board and that he saw slime there "only where my foot hit." *Id.* at 135–36.

Viewing the evidence in the required light, Christiansen has come forward with specific facts sufficient under Rule 56 to counter the exculpatory evidence offered by defendants as to the marlin's stiffness and Christiansen's failure to observe fish slime before the accident. *See Leer v. Murphy,* 844 F.2d 628, 631 (9th Cir.1988) (party opposing summary judgment must set forth specific facts demonstrating a genuine issue of material fact). Genuine issues of fact, directly material to the moving defendants' liability, remain as to whether a slimy marlin was handled by these defendants' employees and crew and whether it was the source of fish slime on which Christiansen slipped.

### III. CONCLUSION

Because this Court has admiralty jurisdiction over the case at bar under either 28 U.S.C. § 1333(1) or 46 U.S.C. § 740, defendants' motion to dismiss is DENIED. Christiansen raised specific facts demonstrating a genuine issue of material fact as to whether the defendants were responsible for the slippery condition of the pier. Accordingly, defendants' motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

---

1. Plaintiff objects that this affidavit is "impermissible hearsay, because the affiant was not known to the notary public, and was not identified properly to the notary public as is required under the law." Response at 5. However, the Court notes that "in the absence of more specific statutory requirements, if the introducer is well known to the officer and is himself apparently well acquainted with the person acknowledging, and there is nothing in the circumstances to create any suspicion as to the identity of the latter, the officer may rely upon the introduction without further proof." 44 A.L.R.3rd 555, 560 (citations omitted).

Given the absence of controlling authority to the contrary, the Court finds considerable merit to this exception to the hearsay rule where, as here, the notary public attests to knowing the introducer personally, the introducer attests under oath to having personal knowledge of the affiant, and the introducer is a responsible person (e.g., an officer of the court). *See* 10 A.L.R. 871 *et seq.* Nevertheless, this issue presents a question of fact, 44 A.L.R.3rd at 360, that the Court need not decide at this juncture given its conclusion that Christiansen has sufficiently raised a triable issue of fact to defeat defendants' motion for summary judgment regardless of whether Hoyle's testimony is considered.