**PRUDENTIAL LINES, INC., Plaintiff,**

v.

**GENERAL TIRE INTERNATIONAL CO., Overseas Packing, Inc., Delaval Turbine Inc., Santini Bros., Inc., Northeast Marine Terminal Company, Quin Marine Service, Inc. and Joseph Vinal Ship Maintenance, Inc., Defendants.**

No. 76 Civ. 2834 (LFM).

United States District Court,
S. D. New York.

March 31, 1978.

Lilly, Sullivan & Purcell, P. C., New York City, for plaintiff by George W. Sullivan, New York City.

Semel, McLaughlin & Boeckmann, New York City, for General Tire Intern. Co. by James I. Lysaght, New York City.

Rivkin, Leff & Herman, Garden City, N. Y., for Overseas Packing, Inc. by Bruce Smith, Garden City, N. Y.

Guggenheimer & Untermyer, New York City and Duane, Morris & Heckscher, Philadelphia, Pa., for Delaval Turbine, Inc. by Reeder R. Fox, Philadelphia, Pa. and Robert E. Smith, New York City.

Aaron, Bruman & Gates, Jericho, N. Y., for Santini Bros., Inc. by Richard M. Gates, Jericho, N. Y.

Mendes & Mount, New York City, for Northeast Marine Terminal Co. by Frank J. Maley, New York City.

Symmers, Fish & Warner, New York City, for Quin Marine Service, Inc. by William Warner, New York City.

Bower & Gardner, New York City, for Joseph Vinal Ship Maintenance, Inc. by Paul B. Marrow, New York City.

## OPINION

MacMAHON, District Judge.

Pursuant to Local Rule 9(m), defendants move for reargument of their motions for summary judgment, or, in the alternative, for partial summary judgment. Rule 56, Fed.R.Civ.P.

## MOTIONS FOR SUMMARY JUDGMENT

With respect to this branch of defendants' motions, the motions for reargument are granted, and, upon reargument, we adhere to our prior opinion, dated November 10, 1977, which denied summary judgment.

1. Defendant Overseas Packing, Inc. ("Overseas") did not join in the original motions, but has now joined with the other defendants in seeking partial summary judgment.

2. The shippers and their agents include the defendants General Tire International Co. ("General"), Delaval Turbine Inc. ("Delaval"), Santini Bros., Inc. ("Santini"), and Overseas.

See *Prudential Lines, Inc. v. General Tire Int'l Co.*, 440 F.Supp. 556, 558–60 (S.D.N.Y. 1977).

## MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In our prior opinion denying these motions, we held that their resolution turned on questions of Rumanian law which could not be answered on the deficient record then before us. See 440 F.Supp. at 560–61. The parties have now provided us with the relevant materials on the Rumanian law, and defendants[1] have renewed their motions, seeking to limit their liability to $500 per package under the Carriage of Goods by Sea Act ("COGSA") 46 U.S.C. § 1304(5), or under general principles of the law of indemnity. See 440 F.Supp. at 560, 561. We grant the motions for reargument, and, upon reargument, we deny the motions for partial summary judgment.

The facts are set forth in our prior opinion and need not be repeated here. See 440 F.Supp. at 557–58. Suffice it to say that plaintiff, an ocean carrier, delivered certain goods to Rumania, where the goods were found damaged. I.S.C.E. Romchim, State Enterprise for Foreign Trade of Rumania ("Romchim"), the consignee, threatened plaintiff with suit in Rumania, where Romchim intended to assert a $16,000,000 claim for cargo damage and for certain consequential damages. Plaintiff settled this claim for $2,000,000 and now seeks indemnity from defendants, the shippers of the goods,[2] and the marine service contractors who had a hand in loading the goods aboard plaintiff's LASH barges.[3]

As noted in our prior opinion, the central question on these motions is whether the plaintiff could have limited its liability to

3. The marine service contractors include the defendants Northeast Marine Terminal Company ("Northeast"), Joseph Vinal Ship Maintenance, Inc. ("Vinal"), and Quin Marine Service, Inc. ("Quin").

$500 per package in a suit brought against it in Rumania by the cargo interests. See 440 F.Supp. at 560–61. Whether the plaintiff could have done so depends upon the effect a Rumanian court would have given to the Clause Paramount found in the bill of lading. That clause provides, in pertinent part, that "[t]his bill of lading shall have effect subject to the U.S. Carriage of Goods by Sea Act. . . ."

■ The parties submitted the testimony of several witnesses expert in Rumanian law. These witnesses concluded unanimously that the courts of Rumania would enforce a contractual choice of law clause, even where such a clause mandates the application of the law of another nation.[4] Indeed, even plaintiff's expert witnesses conceded this fundamental premise.[5] Thus, since the bill of lading represents the parties' contract of carriage,[6] and since that contract specifies the application of COGSA, we can only conclude that the Rumanian courts would have applied COGSA in Romchim's action against plaintiff.

This does not mean, however, that COGSA would have been applied *as a statute* in the Rumanian action. On the contrary, by virtue of their incorporation into the bill of lading, the provisions of COGSA would have been applied by the Rumanian court merely *as terms of a contract*.[7] Under Rumanian choice of law rules, the terms of the contract would have been interpreted under the law of the place of performance.[8] Since the cargo was to be delivered in Rumania, a court of Rumania would have deemed Rumania to have been the place of perform-

ance.[9] Accordingly, the substantive law of Rumania would have been applied in interpreting the terms of the contract of carriage, including the $500 per package damage limitation incorporated from COGSA.

■ Substantive Rumanian law provides that gross negligence on the part of a carrier vitiates any contractual damage limitation.[10] In the instant case, the record contains substantial evidence indicating a complete failure on the part of the carrier and his agents to chock, lash or brace the cargo in the barges. This evidence, the experts agree, would have led to a finding in the Rumanian action that plaintiff had been grossly negligent.[11] Therefore, we must conclude that plaintiff's liability would not have been limited to $500 per package in Rumania, since its gross negligence would have rendered unenforceable the limited liability clause in the bill of lading.

■ With this as a premise, we turn to the contentions of the several defendants. See 440 F.Supp. at 560, 561. Defendants Northeast, Quin and Vinal, the marine service contractors, suggest that their liability is limited to $500 per package by virtue of the Himalaya clause, which gives them, as agents of the carrier, the benefits of COGSA's per package damage ceiling. However, since plaintiff would not have enjoyed a $500 per package ceiling in the Rumanian action, these defendants have no such ceiling here, and their motions for partial summary judgment must be denied.

■ Defendants General, Delaval, Overseas and Santini, the shippers of the dam-

---

4.  Affidavit of Dr. Ciobanu ("Ciobanu") at ¶ 24 (citing several Rumanian treatises and articles), ¶ 41, ¶ 43; Supplementary Affidavit of Ciobanu at ¶¶ 15–16.

5.  See Exhibit W, "Consideration" of Prof. Patrascanu and Prof. Rucareanu ("Exhibit W") at ¶ 5; Affidavit of Dr. Ionescu ("Ionescu") at ¶ 17; Affidavit and Legal Opinion of Ionescu ("Ionescu Interrogatories") at 7, 10; Patrascanu Dep. at 11; Rucareanu Dep. at 9.

6.  Ciobanu at ¶ 41; Ionescu Interrogatories at 7.

7.  Ionescu at ¶ 17. *Cf.* Rucareanu Dep. at 27; Ciobanu at ¶ 41.

8.  Ionescu at ¶¶ 18–19.

9.  *Id.* See also Exhibit W at ¶ 2.

10.  Rucareanu Dep. at 27; Exhibit W at ¶ 6; Ionescu at ¶ 14. See also G. Ripert, *Droit Maritime* § 1824 (1952).

11.  See Patrascanu Dep. at 31, 36–37; Rucareanu Dep. at 32–33; Ionescu at ¶ 16; Exhibit W at ¶ 6. Defendants fail to contest this conclusion. See generally Ciobanu at ¶¶ 44–50.

aged goods, also seek to limit their liability to $500 per package. Although these defendants do not purport to come within the Himalaya clause, they do suggest that plaintiff's settlement in excess of $500 per package was "voluntary" or "gratuitous," and hence unreasonable as a matter of law. However, since plaintiff's liability to Romchim would not have been limited to $500 per package, the amounts paid in settlement of Romchim's claims were not unreasonable as a matter of law.

Accordingly, the motions for reargument are granted, and, upon reargument, defendants' motions for summary judgment, or, in the alternative, for partial summary judgment, are denied in all respects.

So ordered.