In the Matter of the Complaint of **KRETA SHIPPING, S.A.,** as owner of M/V Amphion for Exoneration from or Limitation of Liability.

**Nos. 96 Civ. 1137 (KMW)(AJP), 96 CIV. 600 (KMW), 96 CIV. 703 (KMW) and 96 CIV. 7711 (KMW).**

United States District Court,
S.D. New York.

April 6, 1998.

---

Richard V. Singleton, II, Healy & Baillie, New York, NY, for Plaintiff.

Stanley McDermott, III, Piper & Marbury, New York, NY, Machale A. Miller, O'Neil, Eichin, Miller, Saporito & Harris, New Orleans, LA, David L. Mazaroli, Kirk M. Lyons, Lyons, Skoufalos, Proios & Flood, New York, NY, Timothy D. Ford, Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York, NY, for Defendant.

OPINION and ORDER

KIMBA M. WOOD, District Judge.

In a Report and Recommendation dated December 23, 1997 (the "Report"), Magistrate Judge Andrew J. Peck recommended that the Court grant petitioner Kreta Shipping, S.A.'s ("Kreta") motion to dismiss the Combined Atlantic Carriers, GmbH's ("COMBAC") claims against Kreta to the extent that they seek indemnification for amounts for which COMBAC may become liable in any foreign proceeding (COMBAC's "foreign indemnity" claims). Magistrate Judge Peck recommended that COMBAC's foreign indemnity claims be dismissed with prejudice. Magistrate Judge Peck also recommended that COMBAC's cross-motion to amend its claim filed against Kreta to assert a cause of action for declaratory judgment on its foreign indemnity claims be denied. COMBAC has filed timely objections to the Report, to which Kreta has filed a timely response. The Court also permitted COMBAC to file reply papers. Pursuant to Rule 72(b) and 28 U.S.C. § 636(b)(1), the Court reviews *de novo* those aspects of the Report to which COMBAC objects. For the reasons set forth below, the Court grants Kreta's motion to dismiss COMBAC's foreign indemnity claims against Kreta. The Court dismisses COMBAC's foreign indemnity claims with prejudice. The Court also denies COMBAC's cross-motion to amend its claim filed against Kreta to assert a cause of action for declaratory judgment on its foreign indemnity claims.

### I. *Background and Discussion*

The circumstances that gave rise to this action are set forth in the Report, attached hereto (*see* Report at 288–289), with which familiarity is assumed. The instant motions concern whether COMBAC has a viable non-contractual indemnity claim against Kreta for any liability that COMBAC may incur in any one of the four foreign lawsuits, pending in Germany and Belgium, arising out of the abandonment of the cargo vessel M/V AMPHION, owned by Kreta, but chartered to Metafret, S.A., and sub-chartered to COMBAC, at the time of the voyage that is the subject of these actions. (*See id.* at 288–289.)

In the Report, Magistrate Judge Peck concluded that German and Belgian law govern COMBAC's foreign indemnity claims against Kreta. (*See id.* at 291.) The parties agree that under German and Belgian law, COMBAC has no right of indemnification against Kreta. (*See id.* at 293.) Accordingly, Magistrate Judge Peck's recommendation that COMBAC's foreign indemnity claims against Kreta be dismissed with prejudice followed swiftly from his conclusion that German and Belgian law applies to these claims.

■ COMBAC'S principal objection is to the Report's conclusion that German and Belgian law apply to its foreign indemnity claims. COMBAC contends that the Report errs in failing to apply the choice of law analysis set forth in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and elaborated in *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), and *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Under the *Lauritzen* choice of law analysis, COMBAC argues, the Court should conclude that federal maritime law or Greek law apply to COMBAC's foreign indemnity claims. In response, Kreta defends the Report's conclusion that the Court need not apply the *Lauritzen* analysis. Kreta also argues that even under the *Lauritzen* analysis, German and Belgian law apply. The Court agrees with COMBAC that it must apply the *Lauritzen* analysis, but finds that, under the *Lauritzen* analysis, German and/or Belgian law apply to COMBAC's foreign indemnity claims.

## A. *Applicability of the Lauritzen Analysis*

Magistrate Judge Peck concluded that the multi-factor maritime choice of law analysis of *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) does not apply to noncontractual indemnity claims. Instead, Magistrate Judge Peck relied upon the rule that, with regard to maritime noncontractual indemnity claims, the body of law that governs the indemnitee's primary liability also governs its noncontractual indemnity claims against a third party. This is a well-established rule of law in several circuits. *See,*

*e.g., Vaughn v. Farrell Lines, Inc.,* 937 F.2d 953, 956 (4th Cir.1991) ("We have determined that the underlying tort claims from which the indemnity claim is derived in this action are maritime tort claims to be adjudicated under federal admiralty jurisdiction. Therefore, '[a] noncontractual indemnity claim arising therefrom is similarly a maritime claim.' "); *General Contracting & Trading Co., LLC v. Interpole, Inc.,* 899 F.2d 109, 113 (1st Cir.1990) ("Because GCT's primary complaint against Interpole must be determined under New Hampshire law, we believe that Interpole's attempt to get noncontractual indemnity with respect thereto must also be determined under New Hampshire law, not in terms of COGSA."); *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa,* 761 F.2d 229, 235 (5th Cir.1985) (holding that the body of law establishing the indemnitee's primary liability governs claim for indemnity or contribution against a third party); *see also* Report at 290–291 (citing additional authorities).

Neither the parties nor the Court has located any decisions in the Second Circuit that explicitly consider this maritime choice of law rule. Principally relying on *Carbotrade S.p.A. v. Bureau Veritas,* 99 F.3d 86 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2454, 138 L.Ed.2d 212 (1997), and *Sundance Cruises Corp. v. American Bureau of Shipping,* 7 F.3d 1077 (2d Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994), COMBAC argues nonetheless that the Court should apply the *Lauritzen* analysis to determine the law applicable to COMBAC's foreign indemnity claims. In response, Kreta argues that neither *Carbotrade* nor *Sundance* involved claims for noncontractual indemnification.

COMBAC's reading of *Carbotrade* persuades the Court that it must apply the *Lauritzen* analysis to determine the law applicable to COMBAC's foreign indemnity claims. In *Carbotrade,* the cargo ship, the STATE OF ALEXANDRIA, sank in international waters on a voyage from Greece to the United States. *Carbotrade,* 99 F.3d at 87. The owner of the ship had contracted with Bureau Veritas—a classification society which sets standards for the quality of vessels and performs surveys to determine

whether vessels are in compliance with applicable regulation and quality standards, *id.* at 88—to perform surveys of the ship. *Id.* At the time that the STATE OF ALEXANDRIA sank, her owner had chartered the ship to Carbotrade who had sub-chartered the vessel to Essex Cement Company. *Id.* at 87–88. After Carbotrade's insurer settled with Essex and obtained assignment of its rights, Carbotrade brought suit against Bureau Veritas alleging that it negligently performed surveys of parts of the vessel and thus negligently endorsed the classification certificate. *Id.* at 88. In *Carbotrade,* the Second Circuit Court of Appeals understood Carbotrade's suit to be a tort action, *id.* at 89, and applied the *Lauritzen* analysis to determine the governing law.

The Court does not lightly infer a conflict between the Second Circuit Court of Appeals and an established rule of law in other circuits, particularly where the most relevant Second Circuit Court of Appeals decisions do not directly address the contested rule. In *Carbotrade,* through the charterer Carbotrade's assertion of tort claims against the classification society, Carbotrade sought to shift responsibility to the classification society for damages resulting from the sinking of the vessel. Though these claims are not explicitly identified as such, the Court understands Carbotrade to be asserting noncontractual indemnity claims. " 'Indemnity, by definition, entails the "shifting of responsibility" for any losses "from shoulders of one person to another." ' " *SCAC Transport (USA) Inc. v. S.S. Danaos,* 845 F.2d 1157, 1164 (2d Cir.1988) (quoting W.P. Keeton, et al., *Prosser and Keeton on the Law of Torts* § 51, 344 (5th ed.1984)); *see also United States Fire Ins. Co. v. SS "LIONS GATE BRIDGE",* No. 88 Civ. 9188, 1997 WL 10923 *5–6 (S.D.N.Y. Jan.10, 1997) (Magistrate Judge Dolinger) (discussing three types of

indemnity in admiralty: tort indemnity, *Ryan* indemnity, and contract indemnity). The Second Circuit Court of Appeals applied the *Lauritzen* analysis to Carbotrade's claims. Accordingly, the Court turns to the *Lauritzen* choice of law analysis to determine the law that applies to COMBAC's foreign indemnity claims.

### B.  *Lauritzen Choice of Law Factors*

The Supreme Court in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), adopted an interest analysis for maritime conflicts of law which looks to: "(1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations." *See Carbotrade,* 99 F.3d at 90 (citing *Rhoditis,* 389 U.S. at 309; *Lauritzen,* 345 U.S. at 583–92, and *Romero,* 358 U.S. at 382). In weighing these factors, the emphasis is on "applying the law of the state with the most substantial contacts to the event giving rise to the claim . . . ."[1] *Carbotrade,* 99 F.3d at 90–91. COMBAC argues that under the *Lauritzen* analysis, the Court should apply federal maritime law or Greek law to COMBAC's foreign indemnity claims. (COMBAC Obj. at 24; COMBAC Reply Obj. at 9.) The only factor that COMBAC can argue supports applying federal maritime law to its foreign indemnity claims is the sixth factor— the inaccessibility of foreign forum. This factor, however, has traditionally been given little weight in the *Lauritzen* analysis. *See Carbotrade,* 99 F.3d at 91. The Court rejects the suggestion that this factor should be determinative of its *Lauritzen* analysis. As explained below, the Court also finds that the factors which COMBAC argues support applying Greek law do not warrant applying

---

1. In *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 309, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Supreme Court noted that the seven *Lauritzen* factors are not intended to be exhaustive. *Id.* In the context of this case, because the claim at issue is one for indemnity, the Court finds that aspects of the primary liability of COMBAC to the cargo claimants also bear on its analysis. Merely because the Court does not adopt the rule that the body of law establishing the indemnitee's

primary liability governs its claim for indemnification without undergoing the *Lauritzen* analysis, does not imply that the basis for this rule can not play role in the Court's choice of law analysis. Indeed, these factors, as noted in the text, bear on the question of "which jurisdiction has the greatest interest in the dispute or the most substantial contact with it." *Carbotrade,* 99 F.3d at 90.

Greek law. Rather, in the Court's balancing of the *Lauritzen* factors, it finds that Germany and Belgium are the jurisdictions with the greatest interest in this dispute, and the most significant contacts with it. Therefore the Court finds that German and/or Belgian law applies to COMBAC's foreign indemnity claims.

### 1. *Place of the Wrongful Act*

COMBAC contends Greek law applies, because decisions regarding the upkeep and maintenance of the AMPHION originated from the Greek office of Astron Maritime S.A. ("Astron"), Kreta's managing agent. But COMBAC concedes that Kreta's failure, if any, to provide a seaworthy vessel could have occurred at several locations: Greece, the United States, the high seas, Germany, and/or the Netherlands. (COMBAC letter 8/22/97 at 3.) The AMPHION underwent inspections in Greece; New Orleans, U.S.A.; Germany; and Belgium, (App. ¶¶ 16, 18, 23, 25, 28, 29), in which Kreta was involved. Kreta contends that, to the extent that any recovery will be permitted to the cargo claimants (in their actions in Belgium and Germany), it will be because they are able to establish that the vessel was unseaworthy upon commencing the voyage from Belgium and Germany. Therefore, Kreta suggests, this factor supports applying the law of Belgium and Germany to COMBAC's foreign indemnity claims.

The most relevant wrongful conduct for COMBAC's foreign indemnity claim against Kreta is Kreta's alleged breach of a duty it owed to COMBAC to provide a sea worthy vessel. But, as COMBAC notes, (COMBAC letter 8/22/97 at 3), this alleged breach does not point strongly to any one country's law, because Kreta may have breached its duty in any of the places mentioned by COMBAC, and certainly it does not point strongly toward federal maritime law or Greek law.

### 2. *Law of the Flag*

"The law of the flag ... is one of several factors to be considered and in *Rhoditis* itself, the Supreme Court applied United States law, notwithstanding that the ship flew a Greek flag, the plaintiff was a Greek citizen, and his employment contract was signed in Greece ...." *Carbotrade*, 99 F.3d at 90. Still "strong considerations in favor of applying the flag 'must prevail unless some heavy counterweight appears.'" *Id.* (quoting *Lauritzen*, 384 U.S. at 585). The AMPHION was a Greek flagged vessel.

Both parties submit that the greater weight given to the law of the flag is not appropriate in the circumstances of this case. (COMBAC Obj. 21; Kreta Obj. 17.) Because there is scant connection between Greece and the events surrounding the AMPHION's voyage that is the subject of these lawsuits, and because Greece has little interest in this dispute, the Court finds that other considerations outweigh application of the law of the flag here. *See Carbotrade*, 99 F.3d at 90–93 (applying law of Greece to a vessel under the flag of the United Kingdom).

### 3. *Allegiance or Domicile of the Injured Party*

COMBAC is a German company that subchartered the AMPHION from Metafret in Bremen, Germany. (COMBAC App. ¶ 1, hereafter cited to as App. with paragraph number.) COMBAC arranged for the cargo to be loaded aboard the vessel in Belgium and Germany and issued bills of lading for the cargo in Belgium and Germany. The Court views these contacts with Germany and Belgium to be significant. These contacts show that Germany and Belgium have a strong interest in this dispute. Accordingly, this factor strongly favors the law of Germany and/or Belgium.

### 4. *Allegiance of Domicile of Shipowner*

Kreta was a Liberian company whose only asset, the vessel, has already been sold for scrap. Both parties submit that this factor should not be given weight in the choice of law analysis. The Court agrees.

### 5. *Place of Contract*

Both parties agree that there was no contract between COMBAC and Kreta. In *Carbotrade*, the Second Circuit Court of Appeals concluded that because no direct contractual relationship existed between plaintiff and de-

fendant this factor would not be involved in its analysis. *Carbotrade,* 99 F.3d at 91. However, in this case, it is worth noting that the sub-charter that gave COMBAC rights to the vessel was entered in Bremen, Germany, and that the bills of lading on which the primary claims against COMBAC are based were issued in Belgium and Germany, and will be construed in the Belgian and German courts under the laws of those countries. Belgium and Germany clearly have an interest in this dispute. Because the cargo claimants are the parties seeking relief in the Belgian and German courts, the Court finds these considerations point toward the law of Belgium and Germany.

### 6. *Inaccessibility of Foreign Forum*

COMBAC argues that because it has no claim for indemnity against Kreta under either the law of Belgium or Germany, this factor should weigh against the application of either the law of Belgium or Germany. For this argument, COMBAC relies on the language in a Supreme Court *forum non conveniens* decision to the effect that "dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). However, as the Second Circuit Court of Appeals commented in *Carbotrade,* "[a]s the *Lauritzen* Court itself notes, this factor is more pertinent to a *forum non conveniens* test than to a choice of law test . . . ." *Carbotrade,* 99 F.3d at 91; *see Lauritzen,* 345 U.S. at 589–90. Because the issue before the Court is one of the law applicable to COMBAC's claims, not whether the Court should exercise jurisdiction or retain venue, the Court rejects COMBAC's suggestion that the Court give this factor dispositive weight in its analysis.

### 7. *Law of the Forum*

In *Lauritzen,* the Supreme Court made the following comment on this factor:

The purpose of a conflict-of-law doctrine is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum. Jurisdiction of maritime cases in all countries is so wide and the nature of its subject matter so far-flung that there would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable.

*Lauritzen,* 345 U.S. at 591. In accordance with the principle that the fortuity of forum selection should not have an impact on which law is applicable in a case, this Court finds that the pendency of this action in the United States Courts deserves little weight in the choice of law analysis. Indeed, the Second Circuit in *Carbotrade* recently held that the law of the forum is "irrelevant here because this litigation is in the courts of the United States." *Carbotrade,* 99 F.3d at 91.[2]

### 8. *Summary*

Balancing these factors together in the context of this case, the Court finds that they point toward the law of Germany and Belgium. In the circumstances of this suit, the Court finds that the most significant considerations are the domicile of the injured party(ies), the place of contracting, and the place that the bills of lading were executed. Considering each of these factors, the Court finds that Germany and Belgium have not only the greatest interest in this dispute, but also the most significant contacts with the dispute. The Court also finds that none of the other *Lauritzen* factors merits significant weight or strongly favors the law of another jurisdiction. Because each of the significant factors in the context of this case favors the law of Germany and/or Belgium, the Court finds that the law of Germany and/or Belgium apply to COMBAC's foreign indemnity claims.

---

**2.** Moreover, if this suit had been initiated in the First, Fourth, or Fifth Circuit, the court would most likely apply the *Marathon* rule that the body of law that establishes the indemnitee's primary liability governs its claim for noncontractual indemnity against the third party. *See Marathon,*

761 F.2d at 235. Thus, arguably, the principle of reducing the impact of the fortuity of the choice of forum would further support applying the law of Germany or Belgium to COMBAC's foreign indemnity claims. The Court does not, however, rely on this consideration in its analysis.

Both parties agree that COMBAC has no claim for indemnity against Kreta under either the law of Germany or the law of Belgium. (Kreta letter of 7/3/97; Lyons Decl. Exh. A Roosendaal Decl. ¶ 5, Exh. B Stube Decl. ¶ 5.) Accordingly, the Court dismisses COMBAC's foreign indemnity claims with prejudice. In view of this choice of law conclusion, the Court also finds that permitting COMBAC to amend its claim to include a claim for declaratory judgment relief on its foreign indemnity claim would be futile. Accordingly, the Court denies COMBAC's motion to amend. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (noting that futility of amendment as reason to deny motion to amend).

## II. *Conclusion*

For the reasons set forth above, the Court grants Kreta's motion to dismiss COMBAC's claims against Kreta to the extent that it seeks indemnification for amounts for which COMBAC may become liable in any foreign proceeding [docket no. 65]. The Court dismisses COMBAC's foreign indemnity claim with prejudice. The Court also denies COMBAC's cross-motion to amend its claim filed against Kreta to assert a cause of action for declaratory judgment on its foreign indemnity claims [docket no. 71].

SO ORDERED.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

This admiralty action arises from the abandonment of the vessel M/V AMPHION during a storm and resulting cargo damage. The issue before the Court on this motion is whether the AMPHION's sub-charterer, defendant Combined Atlantic Carriers, GmbH ("COMBAC"), may seek indemnity from the AMPHION's owner, plaintiff Kreta Shipping,

S.A., for actions brought against COMBAC in Belgium and Germany that are still pending with no finding of liability as of yet. In the alternative, COMBAC asks for permission to amend its pleadings to include a declaratory judgment claim seeking a declaration that COMBAC has a right to indemnity from Kreta upon a finding of liability in the foreign actions. Kreta argues that German and Belgian law does not provide for an indemnity action and, therefore, that COMBAC's indemnity claim must be dismissed. COMBAC argues that federal maritime law, not German or Belgian law, applies and that, under federal maritime law, COMBAC has a right of indemnity against Kreta which is now ripe.

For the reasons set forth below, the Court finds that German and Belgian law, the law which applies to the underlying claims, is applicable to COMBAC's indemnity claim, and therefore recommends that COMBAC's indemnity claim be dismissed with prejudice.

### *FACTS*

This case arises out of the abandonment of the cargo vessel M/V AMPHION during a storm. (Cplt. ¶ 3; COMBAC Am. Claim ¶¶ 3, 5.) Kreta, a Liberian corporation that owns the AMPHION, chartered the AMPHION to Metafret, S.A. pursuant to a time-charter [1]; the AMPHION was being operated under that time charter at the time of the voyage which is the subject of this limitation action. (Cplt. ¶ 2; COMBAC Am. Claim ¶ 3; Lyons Dec. ¶ 10; 6/11/97 Thuysen Letter Ex. B: Metafret Time–Charter; Kreta Reply Br. at 5.) On December 21, 1995, Medafret subchartered the vessel to COMBAC, a German corporation, pursuant to a time charter. (COMBAC Am. Claim ¶ 2; Lyons Dec. ¶ 9; 6/11/97 Thuysen Letter Ex. A: COMBAC time-charter; Kreta Rely Br. at 5.) Under

1. A time charter is a contract for the use of a vessel for a particular period of time. The time charterer has the right to direct the movements of the vessel, but the owner retains possession and control through the master and crew, who remain in his employ. In the absence of any provision to the contrary in the charter party, a charterer may subcharter the vessel to another party, so long as the terms of the subcharter do not conflict with those of the preceding charters. Thus, it is common for a vessel to be subject to

several charters during any one voyage, with each charterer in contractual privity with the next party up and down the chain and the relationships between these charterers governed by the terms of the charters entered between them. *See, e.g.,* 2 Schoenbaum, *Admiralty and Maritime Law,* § 11–1 at 169 (2d ed.1994); *Saint John Marine Co. v. United States,* 92 F.3d 39, 41 n. 1 (2d Cir.1996); *Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S,* 943 F.2d 220, 221 n. 2 (2d Cir. 1991). (*See also* Kreta Reply Br. at 4–5.)

this sub-charter, COMBAC arranged to transport steel cargo for various cargo interests from Antwerp, Belgium and Brake, Germany to ports along the eastern coast of the United States. (Cplt. ¶ 4; COMBAC Am. Claim ¶ 4; Kreta Reply Br. at 5.) COMBAC's agents issued bills of lading for the cargo, using a form prepared by COMBAC and signing the bills "for the Master." (Burnett Aff. Ex. 1: Bill of Lading; Kreta Reply Br. at 5; Kreta 6/5/97 Letter to the Court at 1–2.)

The AMPHION set sail with its steel cargo on December 31, 1995. (Cplt. ¶ 4; COMBAC Am. Claim ¶ 4; *see* 1/3/97 Tr. at 4.) During the voyage, the AMPHION was damaged by a storm. (Cplt. ¶ 5; COMBAC Am. Claim ¶ 5; *see* 1/3/97 Tr. at 4.) The crew abandoned the AMPHION on January 11, 1996. (Cplt. ¶ 5; COMBAC Am. Claim ¶ 5; *see* 1/3/97 Tr. at 5.) The AMPHION was later salvaged and repaired in Halifax and completed its voyage. (Cplt. ¶ 7; COMBAC Am. Claim ¶ 6; Burnett Aff. Ex. 2; *see* 1/3/97 Tr. at 5.) Various cargo claimants allege that the AMPHION's steel cargo was damaged by exposure to seawater.

Kreta commenced the instant proceeding, pursuant to the Shipowner's Limitation of Liability Act, 46 U.S.C.App. § 181 *et seq.* Kreta's complaint seeks exoneration from or limitation of liability for all loss or damage occurring on the voyage. (Cplt.¶ 14.) COMBAC and various cargo interests have filed claims in the limitation action for damages arising from this incident. (*See* Lyons Dec. ¶ 2.) Certain cargo interests also commenced separate actions in this Court which were consolidated with this limitation action. (Lyons Dec. ¶ 2.) Four other lawsuits arising from this incident are pending against, *inter alia*, COMBAC in Belgium and Germany. (Kreta 3(g) ¶¶ 2, 3; Singleton Aff. ¶¶ 4, 5;

COMBAC Am. Claim ¶ 7; Lyons Dec. ¶ 3 & Exs. A, B.) COMBAC has incurred legal fees in defending the foreign actions. (Lyons Dec. Ex. A: Roosendaal Dec. ¶ 6; Lyons Dec. Ex. B: Strube Dec. ¶ 6.) [2]

The present motion addresses whether COMBAC presently may maintain an indemnity action here against Kreta for liability that COMBAC may face in the foreign proceedings, as well as legal costs incurred in defending those proceedings, or may amend its claim to seek a declaratory judgment that COMBAC would be entitled to indemnity from Kreta should COMBAC be found liable in the foreign proceedings.

### ANALYSIS

Kreta argues that COMBAC does not have an indemnity right under German and Belgian law, which Kreta argues is the applicable law since the underlying claims upon which COMBAC seeks indemnity are governed by German and Belgian law. COMBAC argues that federal maritime law, not German and Belgian law, applies. Since the outcome of this motion depends on which law applies, the Court must decide a maritime choice of law issue: Whether the law which applies to the claims underlying a noncontractual indemnity claim necessarily applies to the indemnity claim as well, or if the traditional *Lauritzen* factors must be examined.

In *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the Supreme Court set forth the choice of law analysis for maritime torts, which involves a review of a number of factors.[3] *Lauritzen*'s analysis also extends to maritime contracts. *See, e.g., State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 416 (2d Cir.1990) ("*Lauritzen* dealt with choice of law

---

2. The subcharter between Medafret and COMBAC contained a London arbitration clause, pursuant to which COMBAC has commenced arbitration against Medafret in London. (Thuysen 6/11/97 letter, Ex. A: COMBAC time-charter ¶ 17.) In that arbitration, COMBAC is seeking indemnification from Medafret for any amount for which COMBAC might become liable to cargo claimants in, *inter alia*, the Belgian and German suits. Medafret has posted security for COMBAC's claims. (Kreta 6/24/97 letter at 4.)

3. Those factors include the (1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured, (4) allegiance of the shipowner, (5) place of contract, (6) inaccessibility of the foreign forum and (7) law of the foreign forum. *Lauritzen*, 345 U.S. at 583–92, 73 S.Ct. at 928–33.

in a maritime personal injury action under the Jones Act; however, its broad choice of law principles are not limited to maritime torts, but 'were intended to guide courts in the application of maritime law generally.' ... *Lauritzen*'s approach to choice of law issues is relevant in addressing matters involving maritime contracts.").

COMBAC argues that *Lauritzen*'s choice of law analysis applies to its noncontractual indemnity claims. (COMBAC 8/22/97 letter at 2–5.) However, neither *Lauritzen* nor the cases applying *Lauritzen* to which COMBAC cites (*Id.* at 2 & n. 3) involve noncontractual indemnity claims. *See Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) (injury to seaman); *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (injury to seaman); *Sundance Cruises Corp. v. American Bureau of Shipping,* 7 F.3d 1077 (2d Cir.1993) (contract to inspect ship), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994); *State Trading Corp. of India, Ltd. v. Assurance-foreningen,* 921 F.2d 409 (direct action under state statute against insurance company). The Court's independent research has failed to uncover any cases applying the *Lauritzen* analysis to noncontractual indemnity claims.

## I. UNDER MARATHON, THE LAW GOVERNING THE UNDERLYING CLAIM GOVERNS THE NON–CONTRACTUAL INDEMNITY CLAIM

While no court in the Second Circuit appears to have grappled with this issue, the Fifth Circuit in *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa,* 761 F.2d 229 (5th Cir.1985), did not apply the *Lauritzen* factors in an analogous situation, instead holding that the law governing the underlying claims also governs the noncontractual indemnity claims. In *Marathon,* defendant Rowan caused damage to an underwater oil pipeline owned by plaintiff Marathon. Marathon was unsuccessful in its first attempt to repair the pipeline due to its use of faulty parts produced by Hydrotech. This necessitated a second effort and raised the costs of repair. Marathon then sued Rowan for damages to the pipeline, and won on liability

after trial before the district court. While the parties were preparing for the damages trial and an appeal was pending concerning the liability issue, Rowan filed a third-party action against Hydrotech for common law indemnity for any repair costs attributable to Hydrotech's error. 761 F.2d at 231–32. Prior to the appeal, Rowan and Marathon settled. *Id.* The district court dismissed Rowan's action against Hydrotech. *Id.*

The Fifth Circuit in *Marathon* determined that, had Marathon sued Hydrotech directly, Louisiana law would govern. *Id.* at 234–35. Despite this, the Fifth Circuit held that general maritime law applied to Rowan's claim for indemnity against Hydrotech because Rowan's liability to Marathon arose under general maritime law. The Fifth Circuit explained:

> This requires us to choose the law governing the third party action brought by a defendant liable under general maritime law against a third party liable for the same item of damage under a different body of law, here Louisiana law. We conclude that the indemnity or contribution claim is governed by general maritime law. *This court has held that the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party.* "[A]ny non-contractual right to indemnity in respect of established tort liability arises out of the tortious conduct upon which the indemnitee's liability was established." It is thus of no consequence that the third party indemnitor may be liable to the primary plaintiff under a different body of law, whether contract law [or] the law of a foreign nation....

*Id.* at 235 (fns. omitted & emphasis added).

Thus, under *Marathon*'s reasoning, an indemnitee's noncontractual indemnity claim is governed by the same law that established the indemnitee's primary liability. Other courts have held likewise in the maritime context. *See, e.g., Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 830 n. 7 (5th Cir.1992) ("the body of law that governs a claim for indemnity or contribution usually is the same body of law that establishes the indemnitee's primary liability to the plaintiff. [citing *Marathon* ] In

the instant case, maritime law established plaintiff['s] cause of action against [defendant] and, under the general rule, should govern [defendant's] claim for indemnity or contribution...."); *Vaughn v. Farrell Lines, Inc.*, 937 F.2d 953, 956 (4th Cir.1991) ("This court has previously recognized that '[a]ny noncontractual right to indemnity in respect of established tort liability arises out of the tortious conduct upon which the indemnitee's liability was established.' ... We have determined that the underlying tort claims from which the indemnity claim is derived in this action are maritime tort claims to be adjudicated under federal admiralty jurisdiction. Therefore, '[a] noncontractual indemnity claim arising therefrom is similarly a maritime claim.' "); *White v. Johns–Manville Corp.*, 662 F.2d 243, 247 (4th Cir.1981) ("Any noncontractual right to indemnity in respect of established tort liability arises out of the tortious conduct upon which the indemnitee's liability was established. Such a noncontractual indemnity claim is not based on any preexisting relationship between the indemnitor and indemnitee independent of the injuries for which recovery is sought. It arises rather from an equitable assessment of the fault of each in relation to the wrong done.... This court has now determined that the main claims from which the noncon-

tractual indemnity claim are derived are maritime tort claims to be adjudicated under federal admiralty jurisdiction.... A noncontractual indemnity claim arising therefrom is similarly a maritime claim, ... to be assessed under principles of maritime law."); *Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe*, 434 F.Supp. 920, 927 (E.D.La.1977) ("An action for indemnity based upon a maritime tort is governed by maritime law."); *Sheffield v. Owens–Corning Fiberglass Corp.*, 595 So.2d 443, 447 (Ala.1992) ("Although the claims of the plaintiffs against the shipowners for Jones Act negligence and unseaworthiness are not at issue in this appeal, it is undisputed that federal law governs those claims. It follows, therefore, that federal maritime law also governs the indemnity claims of the shipowners") (fn. omitted); *Swogger v. Waterman S.S. Corp.*, 151 A.D.2d 100, 109, 546 N.Y.S.2d 80, 85 (1st Dep't 1989) ("Because Admiralty law applies to the rights of the underlying claimant, the [indemnity claims] should be determined under Admiralty law.").[4]

Therefore, the Court holds that COMBAC's indemnity claims are governed by the law which governs the underlying claims against COMBAC in the foreign (German and Belgian) proceedings.[5]

---

**4.** In *Bradford v. Indiana & Mich. Elec. Co.*, 588 F.Supp. 708 (S.D.W.Va.1984), while the district court explained that "if the main claim from which the claims for noncontractual indemnity or contribution are derived is governed by admiralty law then the indemnity or contribution claims will also be governed by admiralty law," it further stated that "[i]n the case before the court the claim by the plaintiff against [defendant] was definitely governed by admiralty law.... However, the court does not believe that that circumstance is sufficient ... to determine that this action also is to be governed by maritime law. The court believes that it must also determine whether plaintiff's action would have been governed by admiralty law had the plaintiff directly sued [third party defendants] for his injuries...." *Id.* at 712–13. The Court then determined that the indemnity claim was governed by admiralty law, as the primary liability claim had been, largely based on the following analysis:

> To adopt [third party defendants'] arguments would mean that if plaintiff had elected to sue them as well as [defendant], admiralty law would have been applicable only to the claim against [defendant] while the claims against them would have been governed by some state's law, even though the accident occurred

on navigable waters. That could lead to disruption of the national uniformity of admiralty law and could defeat a plaintiff's right to recovery as established under admiralty law principles....

> Therefore, the court holds that [defendant's] claims for indemnity or contribution against [third party defendants] are within the court's admiralty jurisdiction and are governed by admiralty law because if the original plaintiff had brought a direct action against them that action would have been governed by admiralty law.

*Id.* at 713–14. In other words, in its consideration of what law would apply if the indemnity claim had been brought directly against the third party defendant by the plaintiff, the Court gave heavy weight to the complications that would arise from the application of two different laws to the primary and indemnity claims. The Court sees this as, in essence, application of the *Marathon* rule, only couched as an inquiry into the law that would apply if the plaintiff had sued the third party defendant directly.

**5.** The Court notes that its holding is also supported by the Restatement (Second) of Conflicts, which suggests that indemnity claims should be

## II. THE INDEMNITY CLAIM HERE IS TORT, NOT CONTRACT, BASED, SO THE MARATHON RULE IS APPLICABLE

COMBAC argues that *Marathon* is not applicable here because the primary liability in *Marathon* was tort-based, while here the primary liability, if any, would be based on breach of contract. COMBAC asserts:

> *Marathon* ... does not require application of Belgium [sic] or German law. *Marathon* and the cases on which it relies were all pure tort cases, meaning that the primary liability of the indemnitee was in tort and the claim over against the indemnitor was also in tort.

> Here, however, COMBAC's primary liability, if any, to cargo interests in Belgium or Germany would be based on alleged breach of the contracts of carriage—the bills of lading issued by COMBAC for the carriage of the cargo from Belgium and Germany to the United States. Indeed, in Belgium and Germany cargo interests have relied on the bills of lading issued by COMBAC as the basis for their claims against COMBAC.

(8/22/97 COMBAC letter.)

COMBAC has provided no rationale for the distinction it draws between a tort and contract basis for the primary liability, and the Court does not discern any. COMBAC seems to be seizing upon the "noncontractual indemnity" language contained in *Marathon*. COMBAC, however, misses the point. *Marathon* was referring to the basis for the indemnity claim, not the primary liability: if the indemnity claim is based in a contract which creates an indemnitor/indemnitee relationship between the parties, then the indemnity claim does not merely arise from the primary liability like a common law indemnity claim; it arises from the contract between the parties. In that event, there is no reason for the law applicable to the indemnity claim to depend upon the law establishing the primary liability. Rather, the Court must undertake an inquiry into the law that governs the contract, and traditional choice of law analysis applies. For example, in *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 416–17 (2d Cir.1990), the Second Circuit applied the traditional *Lauritzen* maritime choice of law analysis to an indemnity claim based in contract.

This point is further demonstrated by *Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe*, 434 F.Supp. 920 (E.D.La.1977), a case upon which *Marathon* relied. *See Marathon*, 761 F.2d at 235 & n. 23 (citing *Avondale* and other cases for the proposition that "[t]his court has held that the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party"). In *Avondale*, the plaintiff put forth two different indemnity theories against the third-party defendants, the first based in contract, the second noncontractual. The Court applied a traditional choice of law analysis to the contract-based indemnity claim. *Id.* at 926 ("Because the original construction contract and technical service contract relating to ship construction are non-maritime contracts, any warranty of workmanlike performance in those contracts must be implied by state, and not maritime, law.") (fn. omitted). As to the noncontractual indemnity claim, the Court explained: "An action for indemnity based upon a maritime tort is governed by maritime law. ... Therefore, although Louisiana law governs the issue of contractual indemnity, maritime law governs the issue of tort indemnity." *Avondale*, 434 F.Supp. at 927. *See also, e.g., Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir.1992) ("Express contractual indemnity agreements generally are enforceable under maritime law. ... The usual rules of contractual interpretation determine the availability of indemnity under such agreements."); *White v. Johns–Manville Corp.*, 662 F.2d 243, 247 (4th Cir.1981) ("The contractual basis on which the manufacturers claim indemnity an implied warranty arising from the purchase contracts to use due care in the use of the asbestos purchased is clear-

decided according to the law applied to the underlying claim. *See* Restatement (Second) of Conflicts § 173 (1969); *see also In re Air Crash Disaster (Polec v. Northwest Airlines, Inc.)*, 86 F.3d 498, 543 (6th Cir.1996) ("Section 173 of the Restatement [ (Second) of Conflicts] suggests that courts decide indemnity claims according to the law applied to the underlying tort.").

ly non-maritime. Virginia law thus controls in assessing this contractual claim.... The noncontractual tort indemnity claim is a different matter," for the reasons discussed at page 9 above).

### III. THE CASES CITED BY COMBAC ARE NOT CONVINCING

COMBAC cites four cases in support of its position that the Court need not apply the law establishing COMBAC's liability to its indemnity claim. The first case COMBAC cites, while less than clear, does not support its position. In fact, if anything, it seems to support the application of the law establishing plaintiff's primary liability to an indemnity claim. In *Prudential Lines, Inc. v. General Tire Int'l Co.*, 448 F.Supp. 202, 205 (S.D.N.Y.1978), the plaintiff ocean carrier settled a suit brought against it in Rumania by the goods' consignee. 448 F.Supp. at 204. The Court first determined that plaintiff's primary liability to the consignee was governed by Rumanian law. The Court explained that under Rumanian law, the Carriage of Goods by Sea Act ("COGSA"), the terms of which had been incorporated in the contract between the plaintiff and the settling party, would have been applied to the claim merely as a contractual provision. *Id.* at 205. The Court further explained that plaintiff's liability in the underlying action would not have been limited to COGSA's $500 per package limitation because plaintiff's gross negligence would render the contractual limitation provision unenforceable under Rumanian law. *Id.* The Court then went on to hold that defendant's liability in plaintiff's indemnity action also would not be limited to $500 per package, explaining that "since plaintiff would not have enjoyed a $500 per package ceiling in the Rumanian action, these defendants have no such ceiling here." *Id.* Thus, the Court apparently applied Rumanian law to the indemnity action because plaintiff's primary liability had been established under Rumanian law.

The remaining three cases cited by COMBAC assumed, without discussion, that law other than that establishing the primary liability applied to the noncontractual indemnity claim. *See Mathiesen v. Panama Canal Co.*, 551 F.2d 954 (5th Cir.1977);[6] *Compania Sud Americana De Vapores, S.A. v. I.T.O. Corp.*, 940 F.Supp. 855, 872 (D.Md.1996); *Anglomar Bulkcarriers, Ltd. v. Maecom, S.A.*, 1982 AMC 1549, 1552, 1554 (S.D.N.Y.1981), *aff'd mem.*, 685 F.2d 423 (2d Cir.), *cert. denied*, 456 U.S. 977, 102 S.Ct. 2243, 72 L.Ed.2d 851 (1982). The Court chooses to follow the reasoned opinions of *Marathon* and its progeny, rather than the cases cited by COMBAC.

### IV. THE PARTIES AGREE THAT UNDER GERMAN AND BELGIAN LAW, COMBAC IS NOT ENTITLED TO INDEMNITY

Kreta and COMBAC agree that German and Belgian law govern the claims in the foreign proceedings pending against COMBAC and, further, that COMBAC cannot maintain an indemnity claim under either German or Belgian law. (*See* 9/9/97 Kreta letter at 3 ("The underlying foreign claims against COMBAC will be decided under the laws of Belgium and Germany. COMBAC's indemnity rights therefore must be decided under the laws of Belgium and Germany. Since, as it fully admits, COMBAC has no right of indemnity under those laws, its foreign indemnity claims should be dismissed."); Kreta 7/3/97 letter at 2 ¶ 2 ("Since COMBAC has admitted in its opposition papers that it has no right to indemnity under Belgian or German law, ... Kreta's motion to dismiss should be granted."); Lyons Dec. Ex. A: Roosendaal Dec. ¶ 5 ("I understand there is no direct contract between COMBAC and the vessel owner, Kreta.... As such, COMBAC has no right under Belgium [sic] law to claim against Kreta for indemnity and contribution in these lawsuits or in any independent lawsuit against Kreta which may be filed in Belgium."); Lyons Dec. Ex. B: Strube Dec. ¶ 5 ("I understand there is no direct contract between COMBAC and the vessel owner, Kreta.... As such, COMBAC has no right under German law to claim

---

**6.** In fact, the Fifth Circuit has since made clear that the law establishing the plaintiff's primary liability applies to the indemnity claim in a mari-

time case. *See Hardy*, 949 F.2d at 830 n. 7; *Marathon*, 761 F.2d at 235.

against Kreta for indemnity and contribution in this lawsuit or in any independent lawsuit against Kreta which may be filed in Germany."); COMBAC Br. at 6 ("In the foreign proceedings, COMBAC cannot, as a matter of law, file an indemnity claim against Kreta," citing Lyons Aff. Exs. A–B); COMBAC. Br. at 9, 10 ("there·is no legal basis under the laws of Belgium or Germany for COMBAC to claim indemnity against Kreta."); Kreta Reply Br. at 11 ("As COMBAC itself points out, under the laws of Belgium and Germany COMBAC is not entitled, under any circumstances, to indemnification from Kreta based on the claims asserted against it in the actions in those countries.").)

Since COMBAC has no right of indemnity against Kreta under German or Belgian law, COMBAC's claim for indemnity based upon the foreign proceedings should be dismissed with prejudice.

### CONCLUSION

For the reasons set forth above, I recommend that the Court dismiss COMBAC's indemnity claim against Kreta with prejudice.[7]

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied*, 513 U.S. 822, 115 S.Ct. 86, 130

L.Ed.2d 38 (1994); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Dec. 23, 1997.

---

7. In light of this conclusion, I do not address any of the parties' other arguments, including Kreta's argument that COMBAC's indemnity claim is not

ripe for resolution and would be limited to $500 per package because of COGSA.